IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | **United States Courts** |
| | § | **Southern District of Texas** |
| DYNEGY, INC. ERISA LITIGATION | § | **ENTERED** |
| | § | **MAR 0 5 2004** |
| CONSTANCE K. SCHIED, on behalf | § | |
| of herself and a class of | § | **Michael N. Milby, Clerk of Court** |
| persons similarly situated, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. H-02-3076 |
| v. | § | |
| | § | |
| DYNEGY, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Plaintiff, Constance K. Schied, brings this civil enforcement action pursuant to § 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132, on behalf of participants and beneficiaries of the Dynegy Inc. Profit Sharing 401(k) Savings Plan (Plan) who were invested in the common stock of Dynegy Inc. through the Plan during the period from April 27, 1999, through January 30, 2003,[1] against defendants, Dynegy, Inc. ("Dynegy" or "the Company"), Dynegy's Board of Directors,[2] the Human Resources

---

[1] Third Amended Complaint for Violations of ERISA (TAC), ¶ 1.

[2] The director defendants are: Charles Watson, Stephen Bergstrom, J. Joe Adjoran, Charles E. Bayless, Darald W. Callahan,
(continued...)

Committee of Dynegy's Board of Directors,[3] Dynegy's Benefit Plans Committee (BPC)[4] and its predecessor, the Retirement/Benefit Plans Committee (RBPC),[5] and the trustees of the trust that held the assets of the Plan:  CG Trust for the period before January 1, 2002, and Vanguard Fiduciary Trust Company for the period after January 1, 2002.  Plaintiff seeks to make the Plan whole for losses caused by breach of defendants' fiduciary duties in violation of ERISA § 409, 29 U.S.C. § 1109, during a proposed class period beginning on April 27, 1999, and ending on January 30, 2003.  TAC ¶¶ 52 and 314.  Pending before the court are the following motions: Defendant Robert D. Doty's Motion to Dismiss (Docket Entry No. 35); Defendant Charles L. Watson's Motion to Dismiss (Docket Entry No. 36); Motion to Dismiss on Behalf of Dynegy Inc. and Certain

---

[2](...continued)
Michael D. Capellas, Daniel L. Dienstbier, Patricia M. Eckert, Jerry L. Johnson, C. Steven McMillan, Robert M. Powers, H. John Riley, Jr., Sheli Z. Rosenberg, Joe J. Stewart, Glenn F. Tilton, John Watson, J. Otis Winters, Jeffrey M. Lipton, Jack D. Mustoe, A. Terence Poole, Peter J. Robertson, Stanley I. Rubenfield, Patricia A. Woertz, Stephen J. Brandon, and Paul N. Woollacott. TAC ¶ 48.

[3]The HRC defendants are:  Stephen Bergstrom, Charles E. Bayless, Darald W. Callahan, Michael D. Capellas, Daniel L. Dienstbier, Patricia M. Eckert, Sheli Z. Rosenberg, Joe J. Stewart, Glenn F. Tilton, Jack D. Mustoe, and Stanley I. Rubenfield. TAC ¶ 49.

[4]The BPC defendants are:  Larry Altenbaumer, Marian M. Davenport, Louis J. Dorey, Alec G. Dreyer, Andrea Lang, Michael Mott, Milton L. Scott, R. Blake Young, and Robert D. Doty, Jr. TAC ¶ 51.

[5]The RBPC defendants are:  John E. Ford, Tom Linton, Lisa Q. Metts, Michael B. Barton, and Robert D. Doty, Jr.  TAC ¶ 50.

Members of its Board of Directors, Benefit Plans and Retirement/Benefit Plans Committees (Docket Entry No. 37); Motion to Dismiss on Behalf of Director Defendants Lipton, Mustoe, Poole, Robertson, Rubenfield, and Woertz and Retirement/Benefit Plans Committee Defendant Barton (Docket Entry No. 41); Motion to Dismiss Third Amended Complaint on Behalf of Defendants Stephen J. Brandon and Paul N. Woollacott for Lack of Service of Process and Personal Jurisdiction (Docket Entry No. 43), as amended and supplemented by Rule 12(b)(6) Motion to Dismiss Third Amended Complaint (Docket Entry No. 54); Defendant CG Trusts' Motion for Summary Judgment, or in the alternative, Motion to Dismiss Count IX of Plaintiff's Third Amended Complaint (Docket Entry No. 61); and Defendant Vanguard Fiduciary Trust Company's Motion to Dismiss Count X of Plaintiff's Third Amended Complaint (Docket Entry No. 52). For the following reasons the pending motions will be ruled upon as stated in the Conclusions and Order, § VI, below.

## I.   <u>Standard of Review</u>

A motion to dismiss for failure to state a claim tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied sub nom Cloud v. United States</u>, 122 S.Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to

the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  Id.  "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 998 (2002)(quoting Hishon v. King & Spalding, 104 S.Ct. 2229, 2232 (1984)).

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Id. at 997 (quoting Scheuer v. Rhodes, 94 S.Ct. 1683, 1686 (1974)).  See also Conley v. Gibson, 78 S.Ct. 99, 102 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

ERISA does not have heightened pleading requirements.  Claims asserted under ERISA are subject to the notice pleading standard of Federal Rule of Civil Procedure 8, which "substitute[d] the requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief' for the technical formula, such as 'facts constituting a cause of action,' which typified the preexisting codes."  Heimann v. National Elevator Industry Pension Fund, 187 F.3d 493, 509 (5th Cir. 1999), overruled on other grounds, Arana v. Ochsner Health Plan, 338 F.3d 433 (5th Cir. 2003)(quoting Charles A. Wright and Arthur R. Miller, Federal

Practice and Procedure, § 1202 at 68 (2d ed. 1990)). <u>See also</u> <u>Swierkiewicz</u>, 122 S.Ct. at 998 (Rule 8 is a simplified notice pleading standard that applies to all civil actions, with limited exceptions, <u>i.e.</u>, those enumerated in Rule 9(b), and requires merely a statement that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498 (5th Cir. 2000)(citing Fed.R.Civ.P. 12(b)(6)).  Documents not attached to the pleadings, but to the motion to dismiss, may be considered "part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim . . . [because i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." <u>Id.</u> at 498-499 (citing <u>Venture Assocs. Corp. v. Zenith Data Sys. Corp.</u>, 987 F.2d 429, 431 (7th Cir. 1993)).  <u>See also</u> <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 312-314 (5th Cir. 2002)(allowing consideration of documents attached to motion to dismiss where as here the plaintiff referenced those documents in her complaint, relied on their contents to assert her claims, and did not object to their consideration by the court).

## II.   Introduction to Dynegy and the Events Leading to this Action

Plaintiff's TAC contains the following factual allegations about Dynegy and the events leading to this action, which for purposes of the pending motions are accepted as true.

### A.   Dynegy[6]

Dynegy was originally known as Natural Gas Clearinghouse, a company that was founded in 1984 to match gas buyers and sellers without taking title.   Throughout the 1980s the company grew dramatically as deregulation of the natural gas industry permitted independent marketers to secure larger volumes of gas.   By 1990 the company was trading natural gas futures, buying gas gathering and processing facilities, and creating subsidiaries.   In 1995 the company changed its name to NGC and went public after buying Trident NGL, an integrated natural gas liquids company.   In 1996 NGC bought Chevron's natural gas business and propane dealer LPG Services Group.   In 1997 NGC acquired Destec Energy and began forming retail energy market alliances with regional entities.   In 1998 the company continued forming alliances with regional entities and changed its name to Dynegy, short for "dynamic energy." Dynegy's current businesses include power generation and wholesale and direct commercial and industrial marketing of power, natural gas, coal, and related products.   Dynegy also engages in the

---

[6]TAC ¶¶ 74-77.

transportation, gathering, and processing of natural gas liquids and the transmission and distribution of electricity and natural gas to retail consumers.

## B.   Events Leading to this Action

Plaintiff alleges that

> [t]hroughout the Class Period [April 27, 1999, to January 20, 2003], the Company appeared to grow rapidly and to experience tremendous and sustained growth in revenues.  As a result, the Company was able to raise more than $1.7 billion in 2000 and 2001 alone from the issuance and sale of stock to investors, including sales to the Plan.  During the Class Period, Dynegy stock experienced a meteoric rise from trading at under $8 per share at the start of the Class Period to trading at over $50 per share.

> Throughout the Class Period, Dynegy engaged in . . . activities which Defendants knew or should have known resulted in artificially inflating Dynegy's earnings, revenue and stock price: (1) Project Alpha . . . (2) Round-Trip Trades . . . (3) Energy Price Manipulation . . . (4) Financing and Liquidity Constraints . . . (5) Intentional Attempt to Manipulate Financial Results.

> . . . Dynegy eventually was forced to restate its financial results for 1999-2001, twice within a three-month period as . . . revelations about the deception during that time-period came to light.

> . . . In response to the disclosure of its misconduct, Dynegy's stock fell . . .

> . . . these disclosures eventually revealed . . . that during the Class Period those entrusted with responsibility for the investment of or the supervision of those persons responsible for investment of Plan assets were either (a) the same officers and directors involved in misrepresenting and/or the manipulation of Dynegy's earnings or (b) officers and directors in the company in a position to, but who failed to, take the necessary steps to discover the truth of the misrepresentations and financial manipulations.  In

either case, these fiduciaries of the Plan failed to act appropriately to protect the retirement savings of the Participants.

In short, by no later than the beginning of the Class Period, Dynegy and the other Defendants knew, or should have known, that Dynegy's stock was a highly inappropriate investment for a long-term retirement savings plan such as the Plan because of the use of special purpose entities, round-trip trades and other questionable business practices. Despite this, Defendants continued to offer Dynegy's stock as a Plan investment alternative, continued to cause Dynegy matching contributions to be invested in Dynegy stock, and failed to correct the materially misleading statements that had been made to the market and Plan participants.

As a result, when the market learned that Dynegy's purported spectacular growth was based on sham transactions, phoney trades, price manipulation and overstatement of revenues, what had once been the employees' investment of over $62.8 million in Company stock became essentially worthless.

TAC ¶¶ 81-87.

Paragraphs 88-239 of plaintiff's TAC details statements through which plaintiff alleges that "defendants tout[ed] Dynegy's performance and operations, fostering unwarranted confidence in the company's strength and merits of investment in company stock." (Heading above TAC ¶ 88)   The statements include press releases, announcements, Securities and Exchange Commission (SEC) filings, conference calls with analysts, and interviews with corporate officers reported in various media outlets including both general publications such as <u>The Wall Street Journal</u> and <u>The New York Times</u>, and industry specific publications such as <u>Megawatt Daily</u>. Plaintiff alleges that "[t]he Class Period commences on April 27, 1999, when Dynegy issued its first quarter 1999 earnings release,

touting the Company's strong performance." TAC ¶ 88. Plaintiff alleges that the Class Period continues until at least January 30, 2003, the day before the company released its earnings statement for 2002, which restated the company's results for 1999-2001 and the first three quarters of 2002. TAC ¶ 231.

Plaintiff alleges that the following statements were specifically made to Plan participants:

> Dynegy is a widely-held public company, with the retirement savings of thousands of its employees invested heavily in the Company's stock through the Plan. At the height of its business during the Class Period, Dynegy employed over 6,000 people. In retaining existing employees and in recruiting prospective employees, the Company told employees that they would be expected to work hard but that they would be well rewarded for their efforts.

> Throughout the Class Period, Defendants touted the purportedly spectacular growth, performance and earnings of the Company and its operations to the market generally and to employees specifically. Both informally, as well as formally, through events such as "town meetings," high level Company officers and representatives highlighted the Company's performance and outlook for employee attendees.

> These communications came in various forms, including filings with the Securities and Exchange Commission ("SEC"). For example, the Plan Prospectus dated January 16, 2002, which was provided to Plan participants, expressly incorporates by reference Dynegy's SEC filings. Under the heading "INVESTMENT OPTIONS," the Prospectus states:

>> Each participant is encouraged to carefully review Dynegy's most recent Annual Report on Form 10-K and each Quarterly Report on Form 10-Q and Current Report on Form 8-K relating to Dynegy's current fiscal year for additional information relevant to investments in the Dynegy Stock Fund.

> Upon information and belief, the Plan Prospectus dated January 16, 2002, was also the Summary Plan Description ("SPD") within the meaning of ERISA § 102, 29 U.S.C. § 1022, and replaced and superceded the Summary Plan Description provided to Plan participants in 1999.

TAC ¶¶ 78-80.  Plaintiff alleges that

> [a]s a result of the fiduciary breaches by the Defendants, the investment of Plaintiff and other members of the Class in Dynegy stock through the Plan has become virtually worthless . . . [and that m]eanwhile, certain Defendants netted significant profit by exercising options and then selling stock during the class period.

TAC ¶¶ 238-239.  Plaintiff alleges that certain defendants profited from stock sales during the proposed class period by large net sales as follows:  Board Chairman and Chief Executive Officer Charles Watson, $12,608,124; Human Resource Committee and Board member Charles Bayless, $2,951,468; and Benefit Plans Committee members Louis J. Dorey who was also Chief Financial Officer, $1,175,460, Andrea Lang who was also Vice-President, $279,824, and Michael R. Mott who was also a Senior Vice-President, $519,930.  TAC ¶ 239.

### III.  The Plan

The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).[7]

---

[7]There are two broad categories of employee benefit plans: defined benefit plans and defined contributions plans.  SEC Release No. 33-6188, 1980 WL 29482, at *6-7 (Feb. 1, 1980), explains the difference:

> A defined benefit plan pays fixed or determinable benefits.  The benefits ordinarily are described in a
> (continued...)

TAC ¶ 57.  The terms of the Plan, which includes both employer and

employee contribution features, are contained in the NGC Profit

Sharing/401k Savings Plan as amended and restated effective

---

[7](...continued)
formula which specifies the amount payable in monthly or
annual installments to participants who retire at a
certain age.  As long as the plan and the employer(s)
contributing to the plan remain solvent, and the plan
continues to be operated, vested participants will
receive the benefits specified.  In the event the
investment results of the plan do not meet expectations,
the employer(s) usually will be required, on the basis of
actuarial computations, to make additional contributions
to fund the promised benefits.  Conversely, if the plan
earnings are better than anticipated, the employer(s) may
be permitted to make contributions that are less than the
projected amounts.

A defined contribution plan does not pay any fixed
or determinable benefits.  Instead, benefits will vary
depending on the amount of plan contributions, the
investment success of the plan, and allocations made of
benefits forfeited by non-vested participants who
terminate employment. Thus, the amount of benefits is
based, in part, on the earnings generated by the plan.
Both defined benefit and defined contribution plans can
provide for employee contributions.  In addition, defined
contribution plans maintain individual accounts for all
participating employees.  These accounts reflect each
participant's share in the underlying trust assets and
are adjusted annually to take into account plan
contributions, earnings, and forfeitures.  In contrast,
defined benefit plans ordinarily do not maintain
individual accounts, except to the extent necessary under
the Internal Revenue Code to record benefits attributable
to voluntary contributions by employees.

ERISA created the Pension Benefit Guarantee Corporation, which
insures minimum pension benefits for defined benefit plans if the
employer becomes unable to pay the pension; there is no insurance
for the defined contribution plans.  The Plan at issue is this case
is a defined contribution plan.

January 1, 1998,[8] and the Dynegy Profit Sharing/401k Savings Plan
as amended and restated May 1, 2001,[9] and January 1, 2002.[10]   TAC
¶ 58.

## A.   Employee Contributions

All Dynegy employees are and were eligible to participate in
the Plan except for employees governed by a collective bargaining
agreement, non-resident aliens, leased employees, independent
contractors, or employees who waive participation.   TAC ¶ 59.
Subject to Internal Revenue Service (IRS) limitations, participants
in the Plan are allowed to contribute both before-and-after-tax
payroll deductions to the Plan.   Participants designate the manner
in which amounts allocated to their accounts will be invested in an
array of investment funds.   Since January 1, 2002, participants

--------------------------------------------------

[8]Exhibit C included in Appendix of Exhibits in Support of
Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of
its Board of Directors, BPC, and RBPC, Docket Entry No. 39 (Ex. C).
Dynegy was formerly known as NGC Corp., and the NGC Plan was
amended on December 21, 1998, to reflect the name change to Dynegy.
See Memorandum of Law in Support of Motion to Dismiss on Behalf of
Dynegy Inc. and Certain Members of its Board of Directors, BPC and
RPBC, Docket Entry No. 38, p. 6 n.5.

[9]Exhibit B included in Appendix of Exhibits in Support of
Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of
its Board of Directors, BPC and RPBC, Docket Entry No. 39 (Ex. B).

[10]Exhibit A included in Appendix of Exhibits in Support of
Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of
its Board of Directors, BPC and RPBC, Docket Entry No. 39 (Ex. A).
Plaintiff asserts that "[u]nless otherwise indicated the relevant
terms of the Plan for purposes of this complaint were identical or
substantially similar and are henceforth referred to as 'the
Governing Plan Documents.'"   TAC ¶ 58.   Except as otherwise stated,
language quoted is from the 1/02 Plan documents.

have been entitled to designate a portion of their accounts for investment in the Company Stock Fund.  TAC ¶ 62.[11]

### B.   Employer Contributions

The Plan allows Dynegy to make voluntary employer matching contributions as well as employer discretionary contributions and specifies that both shall be in Dynegy common stock valued at the closing price of such stock on the New York Stock Exchange for the last day of the month for which the contribution is made.  TAC ¶ 63.  Prior to January 1, 2002, pursuant to § 5.1 of the Plan's governing documents, plan participants were not permitted to convert any amounts contributed in the form of company stock to any other investment fund.  TAC ¶ 64 (citing Ex. A § 5.1).  Effective January 1, 2002, participants were permitted to convert the investment designation of such employer contributions to other investment funds without limitation.  Id.[12]

### C.   Administrative and Fiduciary Provisions

Dynegy is the Plan Sponsor within the meaning of ERISA, 29 U.S.C. § 1002(16)(B).  TAC ¶ 65.  The BPC was created pursuant to a Resolution of the Compensation Committee of Dynegy's Board of Directors adopted on July 21, 2000,[13] and since then, has been the

---

[11]See also Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, pp. 6-10.

[12]See also id. at 10.

[13]Exhibit F included in Appendix of Exhibits in Support of Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of its Board of Directors, BPC and RPBC, Docket Entry No. 39 (Ex. F).

Administrator of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(16)(A).  TAC ¶ 69.[14]  The BPC is also the named fiduciary with respect to the general administration of the Plan having the authority to control and manage the operation and administration of the Plan.[15]  Prior to July 21, 2000, the NGC Retirement/Benefit Plans Committee (RBPC) was the Plan Administrator within the meaning of ERISA, 29 U.S.C. § 1002(16)(A).  TAC ¶ 70.[16]  Dynegy's Board of Directors has the sole authority to appoint and remove the Plan Trustee.  TAC ¶ 66 (citing Ex. A § 15.2).[17]  From the beginning of the Class Period through the end of 2001 CG Trust served as the Trustee of the Plan's assets.  From January 1, 2002, through the end of the Class Period Vanguard served as Trustee of the Plan's assets.  TAC ¶¶ 72-73.

## IV.  Applicable Law

The Fifth Circuit has described ERISA as a statutory scheme enacted by Congress to protect employees' rights to benefits while also encouraging employers to develop employee benefits programs. Martinez v. Schlumberger, Ltd., 338 F.3d 407, 411 (5th Cir. 2003)(citing Edward E. Bintz, Fiduciary Responsibility Under ERISA:

---

[14]See Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 11, Ex. A § 13.1, and Ex. B § 13.1.

[15]Id., and Ex. A § 15.2.

[16]Id. at n.14 (citing Ex. C § 15.2).

[17]See also id. at 12.

_Is There Ever a Fiduciary Duty to Disclose?_, 54 U.Pitt.L.Rev. 979, 979 (1993)). "ERISA assigns to plan fiduciaries 'a number of detailed duties and responsibilities, which include the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specific information, and the avoidance of conflicts of interest.'" _Laborers National Pension Fund v. Northern Trust Quantitative Advisors, Inc._, 173 F.3d 313, 317 (5th Cir.), _cert. denied_, 120 S.Ct. 406 (1999)(quoting _Mertens v. Hewitt Associates_, 113 S.Ct. 2063, 2066 (1993)). _See also Martinez_, 338 F.3d at 411 (ERISA provides specific rules governing fiduciary duties and information that must be provided to participants as well as to government agencies.).

> To establish a claimed breach of fiduciary duty, an ERISA plaintiff must prove a breach of a fiduciary duty and a prima facie case of loss to the plan. "Once the plaintiff has satisfied these burdens, the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by . . . the breach of duty."

_McDonald v. Provident Indem. Life Ins. Co._, 60 F.3d 234, 237 (5th Cir. 1995), _cert. denied_, 116 S.Ct. 1267 (1996)(quoting _Roth v. Sawyer-Cleator Lumber Co._, 16 F.3d 915, 917 (8th Cir. 1994). Disposition of the pending motions turns on ERISA's definition of "fiduciary," the duties that ERISA imposes upon fiduciaries, and the remedies that ERISA provides for breach of those duties.

## A.   ERISA's Definition of "Fiduciary"

A person or entity becomes an ERISA fiduciary either by being named as a fiduciary in written instruments that govern how an

employee benefit plan is established or maintained, or by
exercising discretionary authority or control over the management,
administration, or assets of a plan.  See Mertens, 113 S.Ct. at
2066 (citing 29 U.S.C. § 1002(21)(A) and § 1102(a)).

###   1.   Named Fiduciaries

ERISA requires every employee benefit plan to be established
and maintained pursuant to a written instrument that provides for
one or more "named fiduciaries who jointly or severally shall have
authority to control and manage the operation and administration of
the plan."  29 U.S.C. § 1102(a)(1).

> [T]he term "named fiduciary" means a fiduciary who is
> named in the plan instrument, or who, pursuant to a
> procedure specified in the plan, is identified as a
> fiduciary (A) by a person who is an employer or employee
> organization with respect to the plan or (B) by such an
> employer and such an employee organization acting
> jointly.

29 U.S.C. § 1102(a)(2).

###   2.   Functional Fiduciaries

Persons or entities who are not named as fiduciaries in plan
documents but who exercise discretionary authority and control that
amounts to actual decision-making power are nonetheless fiduciaries
with respect to the plan:

> [A] person is a fiduciary with respect to a plan to the
> extent (i) he exercises any discretionary authority or
> discretionary control respecting management of such plan
> or exercises any authority or control respecting
> management or disposition of its assets, (ii) he renders
> investment advice for a fee or other compensation, direct
> or indirect, with respect to any moneys or other property

of such plan, or has any discretionary authority or
responsibility to do so, or (iii) he has any
discretionary authority or discretionary responsibility
in the administration of such plan.

29 U.S.C. § 1002(21)(A). "A fiduciary within the meaning of ERISA
must be someone acting in the capacity of manager, administrator,
or financial adviser to a 'plan.'" Pegram v. Herdrick, 120 S.Ct.
2143, 2151 (2000)(citing 29 U.S.C. § 1002(21)(A)(i)-(iii)). "'[A]
person is a fiduciary only with respect to those aspects of the
plan over which he exercises authority or control.'" Bannistor v.
Ullman, 287 F.3d 394, 401 (5th Cir. 2002)(quoting Sommers Drug
Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises,
Inc. ("Sommers I"), 793 F.2d 1456, 1459-60 (5th Cir. 1986), cert.
denied, 107 S.Ct. 884 (1987)). See also Sommers Drug Stores Co.
Employee Profit Sharing Trust v. Corrigan ("Sommers II"), 883 F.2d
345, 352 (5th Cir. 1989)(reiterating that "[t]he phrase 'to the
extent' indicates that a person is a fiduciary only with respect to
those aspects of the plan over which he exercises authority and
control."). In this circuit "fiduciary status is to be determined
by looking at the actual authority or power demonstrated, as well
as the formal title and duties of the parties at issue." Landry v.
Air Line Pilots Ass'n Inter. AFL-CIO, 901 F.2d 404, 418 (5th Cir.),
cert. denied, 111 S.Ct. 244 (1990). The issue of fiduciary status
is a mixed question of law and fact. Reich v. Lancaster, 55 F.3d
1034, 1044 (5th Cir. 1995).

**B.   Fiduciary Duties under ERISA**

"In general terms, fiduciary responsibility under ERISA is simply stated." <u>Pegram</u>, 120 S.Ct. at 2151.

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A)  for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan.

(B)  with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C)  by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D)  in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1).

1.   <u>Loyalty</u>

ERISA requires fiduciaries to discharge their duties with respect to a plan "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), that is, "for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of adminis-

tering the plan." 29 U.S.C. § 1104(a)(1)(A). In <u>Pegram</u> the Supreme Court explained that the fiduciary responsibilities imposed by this section of ERISA have their source in the common law of trusts. 120 S.Ct. at 2152 (quoting <u>Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.</u>, 105 S.Ct. 2833, 2840 (1985)("[R]ather than explicitly enumerating <u>all</u> of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility.")). <u>See also</u> <u>Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.</u>, 120 S.Ct. 2180, 2189 (2000)(citing <u>Hughes Aircraft Co. v. Jacobson</u>, 119 S.Ct. 755, 765 (1999)("The common law of trusts . . . offers a starting point for analysis of [ERISA] . . . [unless] it is inconsistent with the language of the statute, its structure, or its purposes.)). "Beyond the threshold statement of responsibility, however, the analogy between ERISA fiduciary and common law trustee becomes problematic . . . because the trustee at common law characteristically wears only his fiduciary hat when he takes action to affect a beneficiary, whereas the trustee under ERISA may wear different hats." <u>Pegram</u>, 120 S.Ct. at 2152. <u>See also</u> <u>Bussian v. RJR Nabisco, Inc.</u>, 223 F.3d 286, 294 (5th Cir. 2000)("Although ERISA's duties gain definition from the law of trusts, the usefulness of trust law to decide cases brought under ERISA is constrained by the statute's provisions.").

(a)   "Two Hat" Doctrine

Comparing a traditional trustee to an ERISA fiduciary, the Pegram Court explained that while a traditional fiduciary "is not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries . . . [u]nder ERISA . . . a fiduciary may have financial interests adverse to beneficiaries." Pegram, 120 S.Ct. at 2152 (citing 2A A. Scott & W. Fratcher, Trusts § 170, p. 311 (4th ed. 1987)). See also Bussian, 223 F.3d at 294-295; Martinez, 338 F.3d at 412-413. "Employers, for example, can be ERISA fiduciaries and still take actions that disadvantage employee beneficiaries when they act as employers (e.g., firing a beneficiary for reasons unrelated to the ERISA plan), or even as plan sponsors (e.g., modifying the terms of a plan as allowed by ERISA to provide less generous benefits)." Id. See also Curtiss-Wright Corp. v. Schoonejongen, 115 S.Ct. 1223, 1228 (1995)(recognizing that a plan sponsor may function in a dual capacity as a business employer (i.e., settlor or plan sponsor) whose activity is not regulated by ERISA, and as a fiduciary of its own established ERISA plan whose activity is regulated by ERISA). Pegram and other courts recognize that

> [t]he law does not require employers to establish
> employee benefit plans.  Congress sought to encourage
> employers to set up plans voluntarily by offering tax
> incentives, methods to limit fiduciary liability, means
> to contain administrative costs, and giving employers
> flexibility and control over matters such as whether or
> when to establish an employee benefit plan, how to design
> a plan, how to amend a plan, when to terminate a plan,

all of which are generally viewed as business decisions of a settlor, not of a fiduciary, and thus not subject to fiduciary obligations.

In re Enron Corporation Securities, Derivative & "ERISA" Litigation, 284 F.Supp.2d 511, 551 (S.D. Tex. 2003)(citing Pegram, 120 S.Ct. at 2153). In Pegram the Court also recognized that there exists no "apparent reason in the ERISA provisions to conclude . . . that this tension is permissible only for the employer or plan sponsor, to the exclusion of persons who provide services to an ERISA plan." 120 S.Ct. at 2152.

(b)  One Hat at a Time

"ERISA does require, however, that a fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." Id. (citing Hughes, 119 S.Ct. at 763, and Varity Corp. v. Howe, 116 S.Ct. 1065, 1070 (1996)). Thus, ERISA does not define "fiduciaries simply as administrators of the plan, or managers or advisers. . . [i]nstead, it defines an administrator, for example, as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan." Id. (citing 29 U.S.C. § 1002(21)(A)). See also Martinez, 338 F.3d at 412-413.

> In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

Pegram, 120 S.Ct. at 2152-2153.

2.   Prudence

ERISA requires fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."   29 U.S.C. § 1104(a)(1)(B).   The Fifth Circuit has stated:

> In determining compliance with ERISA's prudent man standard, courts objectively assess whether the fiduciary, at the time of the transaction, utilized proper methods to investigate, evaluate and structure the investment; acted in a manner as would others familiar with such matters;   and exercised independent judgment when making investment decisions.   "[ERISA's] test of prudence . . . is one of conduct, and not a test of the result of performance of the investment.   The focus of the inquiry is how the fiduciary acted in his selection of the investment, and not whether his investments succeeded or failed."   Thus, the appropriate inquiry is whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment.

Laborers National, 173 F.3d at 317 (citations omitted).

Regulations promulgated by the Department of Labor (DOL) generally reflect that a fiduciary with investment duties must act as a prudent investment manager under the modern portfolio theory rather than under the common law of trusts standard, which examined each investment with an eye toward its individual riskiness.   Id. at 317-318 (citing 29 C.F.R. § 2550.404a-1).   Because the "prudent man" standard focuses on whether the fiduciary utilized appropriate methods to investigate and evaluate the merits of a particular

investment, the appropriate methods in a particular case depend "on the 'character' and 'aim' of the particular plan and decision at issue and the 'circumstances prevailing' at the time a particular course of action must be investigated and undertaken." <u>Bussian</u>, 223 F.3d at 299.    Furthermore, the prudent man standard is an objective standard, and good faith is not a defense to a claim of imprudence.    <u>Reich</u>, 55 F.3d at 1046; <u>Donovan v. Cunningham</u>, 716 F.2d 1455, 1467 (5th Cir. 1983), <u>cert. denied</u>, 104 S.Ct. 3533 (1984) ("this is not a search for subjective good faith—a pure heart and an empty head are not enough").

### 3.    Diversification

ERISA requires fiduciaries to diversify "the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so."    29 U.S.C. § 1104(a)(1)(C).    The Fifth Circuit has stated:

> The degree of investment concentration that would violate this requirement to diversify cannot be stated as a fixed percentage, because a fiduciary must consider the facts and circumstances of each case.    The factors to be considered include (1) the purposes of the plan; (2) the amount of the plan assets; (3) financial and industrial conditions;    (4)    the    type    of    investment,    whether mortgages,    bonds    or    shares    of    stock    or    otherwise; (5)    distribution    as    to    geographical    location; (6) distribution as to industries; (7) dates of maturity.

<u>Metzler v. Graham</u>, 112 F.3d 207, 209 (5th Cir. 1997)(citing H.R.Rep. No. 1280, 93d Cong., 2d Sess. (1974), <u>reprinted in</u> 1974 U.S.C.C.A.N. 5038, 5084-85 (Conf. Rpt. at 304)).    The court also noted, "[w]e think it is entirely appropriate for a fiduciary to

consider the time horizon over which the plan will be required to pay out benefits in evaluating the risk of large loss from an investment strategy." Id. at 210 n.6. Moreover, the court admonished lower courts that "[i]t is clearly imprudent to evaluate diversification solely in hindsight—plan fiduciaries can make honest mistakes that do not detract from a conclusion that their decisions were prudent at the time." Id. at 209.

4.  Compliance

ERISA requires fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter." 29 U.S.C. § 1104(a)(1)(D). "In case of a conflict, the provisions of the ERISA policies as set forth in the statute and regulations prevail over those of the Fund guidelines." Laborers National, 173 F.3d at 322. See also Central States, 105 S.Ct. at 2833 ("[T]rust documents cannot excuse trustees from their duties under ERISA, and . . . trust documents must generally be construed in light of ERISA's policies . . ."); Donovan, 716 F.2d at 1467 ("Though freed by Section 408 from the prohibited transaction rules, ESOP fiduciaries remain subject to the general requirements of Section 404."); Moench v. Robertson, 62 F.3d 553, 567 (3d Cir. 1995), cert. denied, 116 S.Ct. 917 (1996)(where the plan language "constrains the [fiduciaries'] ability to act in the best interest of the

beneficiaries," it is inconsistent with ERISA and with the common law of trusts and must not be followed).

## C.  Remedies for Breach

ERISA makes fiduciaries liable for breach of their duties, and specifies the remedies available against them.  <u>Mertens</u>, 113 S.Ct. at 2066 (citing 29 U.S.C. § 1109(a)).

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . .

29 U.S.C. § 1109(a).  Because this section does not distinguish between fiduciaries who are formally named either by the plan documents or by the procedure established in those documents, and fiduciaries who are informally designated by the functions they perform, § 1109 is applicable to both types of ERISA fiduciary. <u>See</u> <u>Enron</u>, 284 F.Supp.2d at 545-546.

ERISA allows any plan participant, beneficiary, or fiduciary to bring a civil action "for appropriate relief under section 1109." <u>Mertens</u>, 113 S.Ct. at 2066-2067 (quoting 29 U.S.C. § 1132(a)(2)).  ERISA does not permit a civil action for legal damages against a non-fiduciary charged with knowing participation in a fiduciary breach.  <u>Reich v. Rowe</u>, 20 F.3d 25, 29 (1st Cir.

1994)(citing Mertens v. Hewitt Associates, 113 S.Ct. 2063 (1993)).
As an alternative to fiduciary liability, a non-fiduciary may be
liable as a "party in interest," but only for "appropriate
equitable relief," including injunctions and equitable restitution,
in civil actions brought by plan participants under 29 U.S.C.
§ 1132(a)(3).  See Useden v. Acker, 947 F.2d 1563, 1581-82 (11th
Cir. 1991), cert. denied sub nom. Useden v. Greenberg, Traurig,
Hoffman, Lipoff, Rosen & Quentel, 113 S.Ct. 2927 (1993).  A party
in interest of an employee benefit plan is defined in 29 U.S.C.
§ 1002(14) and includes inter alia any fiduciary (administrator,
officer, trustee, custodian, etc.), a person that provides services
to the plan (such as an accountant, attorney), an employer of any
employees covered by the plan, and an employee organization,
including any members covered by the plan.  Such non-fiduciaries
may be held liable for such "appropriate equitable relief" if they
are "parties in interest" and, if with actual or constructive
knowledge, they participate in a fiduciary's breach of its duties
in transactions between the plan and a party in interest that are
expressly prohibited under 29 U.S.C. § 1106(a).  See Enron, 284
F.Supp.2d at 570.

### V.  Defendants' Motions to Dismiss

All the named defendants have either submitted or joined in a
motion to dismiss all of the claims asserted against them.  Because
plaintiff's complaint does not identify specific defendants

allegedly liable for specific breaches, but contains general
allegations asserted against groups of defendants, and because
plaintiff has submitted one omnibus Memorandum in Opposition to all
but two of the pending motions, the briefing is replete with issues
and arguments that overlap.  The court will discuss each claim for
relief asserted against each group of defendant(s); where possible,
arguments raised in opposition to multiple claims will be addressed
only once.

**A.   Claim Asserted Only Against the Benefit Plans Committee**

In Count I Plaintiff alleges that the BPC defendants breached
the fiduciary duties of loyalty and prudence imposed by 29 U.S.C.
§ 1104(a)(1)(A)-(B) when on or about January 16, 2002, and
thereafter, they caused or permitted to be disseminated to plan
participants and beneficiaries a Summary Plan Description (SPD)
that expressly incorporated and adopted by reference false and
material misrepresentations contained in Dynegy's SEC filings.  TAC
¶¶ 240-250.  Plaintiff specifically alleges that the BPC defendants

> knew or should have known by virtue of their positions in
> the [c]ompany and access to contradictory information or
> by virtue of their fiduciary duties to make certain that
> any affirmative representation, whether directly or
> incorporated by reference, which they made in a fiduciary
> capacity was truthful, that the SPD contained
> affirmative, material misrepresentations.

TAC ¶ 249.  Plaintiff also alleges that:

> As of the date of the dissemination of the January 16,
> 2002, Prospectus and SPD, and for as long thereafter as
> the SPD was not corrected, the Benefit Plans Committee

Defendants breached their fiduciary duties to make truthful, affirmative, material, representations with respect to the Plan's use of employer stock as a Plan investment. Rather than providing truthful information to the Plan's participants and beneficiaries regarding the risks of investing in company stock in the Plan, these Defendants, in breach of their fiduciary duties made affirmative, material misrepresentations to the participants and beneficiaries of the Plan about the appropriateness of investing in Company stock and about Dynegy's earnings and business condition, as detailed herein, through incorporation of the material, untruthful information contained in the Company's SEC filings into the SPD, which they knew or should have know[n] were untruthful, thereby encouraging participants of the Plan to make substantial investments in Company stock in the Plan.

TAC ¶ 250.

The BPC defendants do not dispute the BPC's status as Plan Administrator and named fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(16)(A) and § 1102(a)(2). See Ex. A § 13.1; Ex. F; and TAC ¶ 69. Nor do they dispute plaintiff's assertion that ERISA imposes on plan fiduciaries a duty to speak truthfully. See Martinez, 338 F.3d at 425 ("[W]henever an employer exercises a fiduciary function, it must speak truthfully."). See also Varity, 116 S.Ct. at 1074-1075 (quoting Peoria Union Stock Yards Co. v. Penn. Mut. Life Ins. Co., 698 F.2d 320, 326 (7th Cir. 1983) ("[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA"). The BPC defendants argue that Count I should be dismissed because they did not make the alleged misrepresentations,[18] plaintiff's allegations

---

[18]Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, pp. 18-21.

of actual or constructive knowledge are insufficient to state a claim for breach of fiduciary duty,[19] "Count I is a securities claim in ERISA clothing,"[20] and Count I is subsumed in Count II.[21]

### 1.   Responsibility for the Alleged Misrepresentations

Count I is premised on the distribution to plan participants of the 1/02 SPD that plaintiff alleges "expressly incorporated and adopted by reference information contained within . . . [Dynegy's] filings with the SEC."  TAC ¶ 246.  The BPC defendants argue that Count I should be dismissed because the SPD does not incorporate or adopt by reference the misrepresentations contained in Dynegy's SEC filings,[22] and because none of the misrepresentations in Dynegy's SEC filings were made by the BPC or any of its members.[23]

### (a)   Incorporation of SEC Filings into Plan Document

The language at issue appears in "Appendix A:  Investment Options" attached to the document titled "Dynegy Inc. 401(k) Savings Plan, Plan Prospectus" dated January 16, 2002.[24]  Appendix A opens with the statement that "[t]he following investment options

---

[19]Id. at pp. 13-15.

[20]Id. at p. 21.

[21]Id.

[22]Id. at pp. 18-20.

[23]Id. at p. 18.

[24]See Exhibit D in  Appendix of Exhibits in Support of Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of its Board of Directors, BPC and RPBC, Docket Entry No. 39 (Ex. D), p. 30.  Defendants do not dispute that this document was the SPD.

are available under the Plan as of January 1, 2002,"[25] followed by short, single-paragraph descriptions of the Plan's 13 available investment funds. The "Dynegy Stock Fund" is described as "seeks capital appreciation by investing entirely in Dynegy Stock."[26] After the description of the "Dynegy Stock Fund" the following sentence appears:

> Each participant is encouraged to carefully review Dynegy's most recent Annual Report on Form 10-K and each Quarterly Report on Form 10-Q and Current Report on Form 8-K relating to Dynegy's current fiscal year for additional information relevant to investments in the Dynegy Stock Fund.[27]

See also TAC ¶ 80. Although the BPC defendants argue that this sentence is insufficient to incorporate or adopt by reference Dynegy's SEC filings, they do not challenge plaintiff's allegations that the prospectus served as the SPD, that as the Plan administrator the BPC was responsible for preparing and distributing the SPD to plan participants, or that Dynegy's SEC filings misrepresented the company's financial condition.

Plaintiff's allegations that the BPC defendants distributed material that expressly "encouraged" plan participants "to carefully review" Dynegy's SEC filings, which they do not dispute materially misrepresented the company's financial status,

---

[25] Id.

[26] Id.

[27] Id. See also Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, pp. 18-19.

sufficiently alleges that the BPC defendants breached the fiduciary duty to speak truthfully to plan participants. See Worldcom, Inc. Erisa Litigation, 263 F.Supp.2d 745, 766 (S.D.N.Y. 2003) ("Those who are ERISA fiduciaries . . . cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings."). Although the BPC defendants attempt to distinguish Worldcom on grounds that the plan fiduciary in that case actually distributed copies of the SEC filings to plan participants, while they only encouraged Dynegy's plan participants to review the company's SEC filings,[28] the court is not persuaded that this is a meaningful distinction. In both cases the defendants, in the exercise of their fiduciary duties as plan administrators, represented the company's SEC filings as reliable sources of information regarding investment in company stock to plan participants. Following disclosure that the company's SEC filings affirmatively misstated the value of company assets, plaintiffs in both cases filed suit alleging that the defendants breached their fiduciary duties to the plan participants by misrepresenting the SEC filings as reliable sources of information regarding investment in company stock.

---

[28]Defendants' Reply, Docket Entry No. 74, p. 14 & n.15 ("The Worldcom court noted that '[t]he misrepresentations are alleged to have been contained in Worldcom's SEC filings, which were attached . . . to a prospectus given to Worldcom employees.' Worldcom, 263 F.Supp.2d at 766.").

(b)   Source of the Misrepresentations

Asserting that they did not make any of the misrepresentations contained in Dynegy's SEC filings, the BPC defendants argue that Count I should be dismissed because regulations adopted by the DOL require the Plan to make information contained in the company's SEC filings available to plan participants.   In support of this argument, the BPC defendants argue that plaintiff's allegations would necessarily expose "all plan fiduciaries . . . to potential liability for any misstatement in the employer's financial reporting merely because they [i.e., the plan fiduciaries] complied with the DOL's regulation—in effect, requiring plan fiduciaries to act as a shadow board of directors."[29]

The DOL regulations require the Plan to provide either directly or upon request "[c]opies of any prospectuses, financial statements and reports . . . relating to the investment alternatives available under the plan, to the extent such information is provided to the plan."   29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(2)(ii).   The BPC defendants acknowledge, however, that they did not provide copies of Dynegy's SEC filings to plan participants either directly or upon plaintiff's request.   Instead, in the exercise of their discretion, the BPC defendants "encouraged" the plan participants "to carefully review" Dynegy's SEC filings for "additional information relevant to investments in

---

[29]Id. at pp. 14-15.

the Dynegy Stock Fund." Because the DOL regulations do not require plan fiduciaries to encourage participants to carefully review SEC filings, the BPC defendants' decision to do so represents a voluntary exercise of their discretionary authority to communicate with plan participants. In so doing the BPC defendants were bound by fiduciary duties of loyalty and prudence not to communicate information that materially misrepresented Dynegy's financial condition. See Martinez, 338 F.3d at 425 ("[W]henever an employer exercises a fiduciary function, it must speak truthfully."). See also Varity, 116 S.Ct. at 1074-1075 ("[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA").

    2.  Knowledge of the Misrepresentations

    Citing Crowley v. Corning Inc., 234 F.Supp.2d 222 (W.D.N.Y. 2002), and In re McKesson HBOC, Inc. ERISA Litig., 2002 WL 314315888 (N.D. Cal. 2002), the BPC defendants argue that Count I should be dismissed because plaintiff's allegations of actual or constructive knowledge are insufficient to state a claim for breach of fiduciary duty.[30] The BPC defendants argue that plaintiff's allegations that they

> knew or should have known by virtue of their positions in
> the [c]ompany and access to contradictory information or
> by virtue of their fiduciary duties to make certain that
> any affirmative representation, whether directly or
> incorporated by reference, which they made in a fiduciary

---

[30]Id. at pp. 13-15.

capacity was truthful, [and] that the SPD contained affirmative, material misrepresentations,

TAC ¶ 249, is insufficient to state a breach of fiduciary duty claim because these allegations lack facts demonstrating how the BPC defendants should have known closely-held information by virtue of their positions in the company and access to contradictory information, or how the four BPC members whose responsibilities involved only benefits and human resources would have had access to non-public information about Dynegy's allegedly sham transactions, phony trades, price manipulation, and overstatement of revenues.[31]

McKesson involved allegations that a directed trustee "knew, should have known, or is deemed to have known, that [company stock] had become an unsuitable and imprudent investment as a result of . . . improper accounting practices."  2002 WL 314315888, *12. Granting the trustee's motion to dismiss, the court held that it "need not accept conclusory allegations as true on a motion to dismiss where those allegations do not follow from the description of the facts as alleged."  Id.  In Crowley the court faced similar allegations that members of the plan's administrative committee

---

[31]See Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 15 n.21 asserting that there is nothing inherent in the positions held by [PC members] Barton, Vice-President of Human Resources (TAC ¶ 34), Ford, Vice-President of Compensation and Benefits (TAC ¶ 39), Davenport, Vice-President of Human Resources (TAC ¶ 37), and Lang, Senior Vice-President of Human Resources (TAC ¶ 40), that suggests they would have access to contradictory information regarding sham transactions, phony trades, price manipulation, and overstatement of revenues.  TAC ¶ 87.  See also Defendants' Reply, Docket Entry No. 74, p. 11, n.12.

"knew or should have known that the [p]lan should not have invested in [company] stock." 234 F.Supp.2d at 230.  Asserting that such "conclusory allegations . . . fail[ed] even the liberal standard of . . . Rule . . . 12(b)(6)," the court dismissed the complaint.  Id. The BPC defendants argue that "[p]laintiff's failure to support her allegations with any facts . . . renders them inadequate to state a claim even under the liberal pleading standard of Rule 8."[32]

Plaintiff responds that defendants have misstated McKesson because that court actually upheld breach of fiduciary duty claims asserted against members of the plan's administrative committee, and that they misconstrue Crowley because, unlike that complaint, "which only named the committee members as John Does 1-30 and failed to allege what those members knew or should have known . . . [her c]omplaint identifies each of the [c]ommittee members and their relevant, high-level position in the [c]ompany which gave them access to the relevant information."[33]  Plaintiff argues that her "allegations that the [c]ommittee [d]efendants 'knew or should have known' accurately describe[s] a breach of fiduciary duty,"[34] because ERISA fiduciaries breach their duties of loyalty and prudence "when they fail to make independent investigations."[35]  In

---

[32]Defendants' Reply, Docket Entry No. 74, p. 11.

[33]Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 15 (citing TAC ¶¶ 33-45).

[34]Id. at p. 11.

[35]Id.

support plaintiff cites <u>Donovan</u>, 716 F.2d at 1473-1474 (failure to conduct sufficient independent investigation of merits of particular investment is a breach), <u>Laborers' National</u>, 173 F.3d at 317 (appropriate inquiry is whether the individual trustees at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits and structure of the investment), and <u>Leigh v. Engle</u>, 727 F.2d 113, 124 (7th Cir. 1984)(failing to make an intensive and independent investigation of investment options constitutes breach of fiduciary duty). Plaintiff asserts that defendants' argument regarding her allegations of knowledge are an attempt "to impose heightened pleading standards, akin to Rule 9(b) or higher. . ."[36]

Because the BPC defendants do not dispute that they were plan fiduciaries and that as plan fiduciaries they had a duty of loyalty to speak truthfully to plan participants, or that Dynegy's SEC filings misrepresented the company's financial condition, the court concludes that plaintiff's allegations are sufficient to state a claim for breach of fiduciary duty because they assert the existence of a fiduciary duty of loyalty that the BPC defendants breached by distributing the 1/02 SPD. The court also concludes that plaintiff's allegations that the BPC defendants "knew or should have known by virtue of their positions in the [c]ompany and access to contradictory information . . . that the SPD contained affirmative, material misrepresentations," TAC ¶ 249, is sufficient

---

[36]<u>Id.</u> at p. 13.

to state a claim for breach of fiduciary duty because these allegations challenge the adequacy of the investigation that the BPC defendants undertook prior to distributing the 1/02 SPD. Because "[ERISA's] test of prudence . . . is one of conduct, and not a test of the result," <u>Laborers National</u>, 173 F.3d at 317, plaintiff's allegations are sufficient to challenge whether the BPC defendants undertook an appropriate investigation of the merits of the statements published in the 1/02 SPD before the SPD was distributed to plan participants. <u>See</u> <u>id</u>.

As clarified by <u>Swierkiewicz</u>, 122 S.Ct. at 996, Rule 8 does not require a plaintiff to allege facts to support every element of a prima facie case. Unlike the allegations at issue in <u>McKesson</u> and <u>Crowley</u>, which were not supported by any assertions of how or when defendants knew or should have known the adverse information, plaintiff alleges that the BPC defendants "knew or should have known by virtue of their positions in the [c]ompany and access to contradictory information . . . that the SPD contained affirmative, material misrepresentations." TAC ¶ 249. Although very spare, the court is persuaded that these allegations are sufficient to state a claim for breach of ERISA's fiduciary duties of loyalty and prudence regarding statements that undisputedly misrepresented the company's financial condition. Of course, plaintiff will have to demonstrate at trial that by virtue of their positions within the company and access to contradictory information each of the BPC defendants knew or should have known when the SPD was distributed

-37-

to plan participants that relying on the company's SEC filings was not prudent.

### 3.   Securities Claim in ERISA Clothing

The BPC defendants argue that Count I should be dismissed because it "is a transparent attempt to contort ERISA to address conduct fully regulated under a well-established, pre-existing and separate body of law . . . [i.e., that] Count I is nothing more than a securities claim in ERISA clothing."[37]   In response to a similar argument the Worldcom court stated

> [t]he defendants have tried to describe a tension between the federal securities laws and ERISA that would require the dismissal of this claim.  Their arguments, however, cannot undermine the soundness of the general principle underlying [the c]laim . . . that ERISA fiduciaries cannot transmit false information to plan participants when a prudent fiduciary would understand that the information was false.  Nor is there anything in [this c]laim . . . despite the defendants' suggestions otherwise, that requires ERISA fiduciaries to convey non-public material information to Plan participants. What is required, is that any information that is conveyed to participants be conveyed in compliance with the standard of care that applies to ERISA fiduciaries.
>
> . . .
>
> In any event, the existence of duties under one federal statute does not, absent express congressional intent to the contrary, preclude the imposition of overlapping duties under another federal statutory scheme.

Id. at 767.  The court cannot rule out the possibility of an ERISA recovery at the pleading stage simply because federal securities law may also provide relief.

---

[37]Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 21.

4.   <u>Subsumed in Count II</u>

The BPC defendants argue that Count I should be dismissed because "the asserted omissions in Count I are fully addressed in Count II," which alleges that they and their predecessors, the RBPC defendants, breached their duties to disclose and inform.[38] Defendants argue that the duty allegedly breached in Count I could have been cured had they corrected the 1/02 SPD "by providing truthful information to negate the material, untruthful information contained in the Company's SEC filings" as plaintiff alleges in Count II they should have done.[39]

Count I alleges that when the BPC defendants distributed the 1/02 SPD they breached their duty to speak truthfully, a duty that the BPC defendants do not dispute ERISA imposes on fiduciaries. <u>See</u> <u>Martinez</u>, 338 F.3d at 424 ("With respect to an employer's misrepresentations, we conclude, as have all of the circuits that have considered this issue, that an employer, if it chooses to communicate about the future of a participant's plan benefits, has a fiduciary duty to refrain from misrepresentations."). Count II alleges that the BPC defendants breached a fiduciary duty to disclose truthful information on their own initiative, a duty that the BPC defendants argue ERISA does not impose on fiduciaries. Because "[t]he express language of ERISA provides little indication

---

[38]<u>Id</u>.

[39]<u>Id</u>.

as to whether there is ever a fiduciary duty to disclose information to participants," <u>Martinez</u>, 338 F.3d at 412, because in <u>Varity</u>, 116 S.Ct. at 1075, the Court declined to reach the question of whether ERISA fiduciaries have any duty to disclose truthful information on their own initiative, and because in <u>Martinez</u>, the Fifth Circuit demonstrated that it analyzes failure to disclose claims on a case-by-case basis, the court is not persuaded that Count I should be dismissed because it is subsumed in Count II. Moreover, even assuming that the BPC defendants have correctly asserted that Count I is subsumed in Count II, the court nevertheless concludes that Count I should not be dismissed because as stated in Rule 8

> [a] party may set forth two or more statements of a claim . . . alternatively or hypothetically, either in one count or . . . in separate counts. . . A party may also state as many separate claims . . . as the party has regardless of consistency . . .

Fed.R.Civ.P. 8(e).

### 5.   Conclusions as to Count I

Because Count I alleges that the BPC was both the plan administrator and a named fiduciary pursuant to ERISA, and that plaintiff has alleged that acting in their fiduciary capacity as plan administrators, the BPC defendants breached the duties of loyalty and prudence owed to plan participants by distributing to them the 1/02 SPD containing a statement that "encouraged" them "to carefully review" Dynegy's SEC filings "for additional information

relevant to investments in the Dynegy Stock Fund" when the BPC defendants knew or should have known by virtue of their positions in the company and access to contradictory information, that the company's SEC filings contained affirmative, material misrepresentations of Dynegy's financial condition, the court concludes that Count I should not be dismissed for the failure to state a claim.  Because plaintiff does not allege that the BPC defendants encouraged plan participants to carefully review Dynegy's SEC filings for information relevant to investing in the Dynegy Stock Fund at any time before January 16, 2002, the court concludes that Count I is not actionable before that date.

**B.   Claims Asserted Against Dynegy's Benefit Plans Committee and its Retirement Benefit Plans Committee**

Plaintiff alleges that members of Dynegy's BPC and its predecessor, the RBPC (1) breached their duty to disclose and inform, TAC ¶¶ 251-256 (Count II); (2) breached their duty to eliminate inappropriate investment options, TAC ¶¶ 264-271 (Count IV); (3) breached their duty to comply with documents and instruments governing the Plan, TAC ¶¶ 272-278 (Count V); and (4) breached their duty to avoid conflict of interest, TAC ¶¶ 284-287 (Count VII).  The BPC has been the Plan Administrator and a named fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(16)(A) and § 1102(a)(2), since July 21, 2000, when it replaced the RBPC.  See Ex. A § 13.1; Ex. F; and TAC ¶¶ 69-79. Neither the BPC nor the RBPC defendants (collectively "the

committee defendants") dispute their status as plan administrators and named fiduciaries under ERISA.

### 1.   Count II

In Count II plaintiff alleges that the committee defendants breached the duty to disclose and inform.   TAC ¶¶ 251-256. Plaintiff specifically alleges that

> [i]n a plan with various funds available for investment, this duty to inform and disclose includes:  (1) the duty to impart to plan participants material information of which the fiduciary has or should have knowledge in the exercise of statutorily required care, skill, prudence and diligence that is sufficient to apprise the average plan participant of the risks associated with investing in any particular fund; and (2) the duty to correct material representations made to the market about a plan investment about which the fiduciary knows or should know, in the exercise of statutorily required care, skill, prudence and diligence.

> The duties to disclose and inform by the . . . [c]ommittee . . . defendants, arose out of their authority and responsibility under the [g]overning [p]lan [d]ocuments and the [t]rust [a]greement to determine the suitability of each investment fund offered by the Plan, including those holding and acquiring Dynegy stock . . .

TAC ¶¶ 254-255.  Plaintiff alleges that the committee defendants breached the fiduciary duties of loyalty and prudence imposed by 29 U.S.C. § 1104(a)(1)(A)-(B)

> with respect to the Plan's use of employer stock as a Plan investment. . . [because] these Defendants . . . knew or should have known and failed to disclose to the participants and beneficiaries of the Plan material information about the appropriateness of investing in Company stock and about Dynegy's earning and business condition, as detailed herein, thereby encouraging participants of the Plan to make substantial investments in Company stock in the Plan.

TAC ¶ 256.

The committee defendants argue that they are entitled to dismissal of Count II because neither ERISA nor the governing plan documents impose on them an affirmative duty to disclose the information sought by the plaintiff and because ERISA imposes no affirmative duty on plan fiduciaries to provide investment advice. Defendants also argue that Count II should be dismissed for any period before January 1, 2002, because prior to that date plan participants could not have acted on any information that allegedly should have been disclosed.

(a)   ERISA's Disclosure Requirements

In addition to the strict standards of loyalty and prudence derived from the common law of trusts imposed on ERISA fiduciaries by 29 U.S.C. § 1104(a)(1) and (2), ERISA includes reporting and disclosure requirements that the Fifth Circuit has characterized as "crucial components" of its scheme to govern the operation of privately sponsored employee benefit plans. Martinez, 338 F.3d at 411.  The specific rules governing the information that must be provided to participants and beneficiaries, as well as to certain government agencies, appear at 29 U.S.C. §§ 1021-1031. Id.  Citing these disclosure provisions, the committee defendants argue that Count II should be dismissed because ERISA does not contain any specific obligation to disclose information about a plan sponsor's earnings and business condition needed either to apprise the average participant of the risks associated with investing in

company stock or to correct material representations made to the market.  The committee defendants argue that even assuming that such an ERISA duty to disclose does exist, such a duty can only be triggered by a plan participant's written request, and plaintiff has not alleged that she made a written request for information about Dynegy's earnings and business condition.  In support of their arguments the committee defendants cite Ehlmann v. Kaiser Foundation Health Plan of Texas, 198 F.3d 552 (5th Cir.), cert. dismissed, 121 S.Ct. 12 (2000), and Martinez, 338 F.3d at 407, two cases in which the Fifth Circuit expressly refused to recognize that ERISA imposes affirmative duties of disclosure beyond those already provided by the statute and the regulations.

In Ehlmann the Fifth Circuit held that ERISA does not impose a fiduciary duty on health maintenance organizations (HMOs) to disclose physician compensation and reimbursement schemes to plan participants.  198 F.3d at 554-556.  Citing the canon of statutory construction that specific provisions control general provisions, the Ehlmann court reasoned that ERISA's general fiduciary provision "makes no reference to any duty to disclose, [and that although] ERISA contains numerous other provisions detailing an HMO's disclosure duties . . . [those] provisions do not reference physician reimbursement plans."  Id. at 555.  The court also reasoned that because Congress could have included a physician compensation disclosure requirement among ERISA's HMO-specific provisions, and that because the DOL could have promulgated

regulations that required such a disclosure, the absence of such a requirement in both the statute and the regulations was probably intentional.  Id.

In Martinez, 338 F.3d at 416-25, the Fifth Circuit reviewed at length an ERISA fiduciary's duty to disclose future plan benefit changes.  The court began its review with the observation that

> ERISA does not expressly enumerate the particular duties of a fiduciary, but rather "relies on the common law of trusts to define the general scope of a fiduciary's responsibilities." As a result, "[t]he express language of ERISA provides little indication as to whether there is ever a fiduciary duty to disclose information to participants and beneficiaries," and "[n]either ERISA's fiduciary duty nor reporting and disclosure rules directly address the relationship between" one another.

Id. at 412 (quoting Bintz n.9 at 985 and 988).  The court observed that "[a]lthough trust principles impose a duty of disclosure upon an ERISA fiduciary when there are 'material facts affecting the interest of the beneficiary which [the fiduciary] knows the beneficiary does not know' but 'needs to know for his protection,'" id. (quoting Restatement (Second) of Trusts § 173 cmt. d (1959)), this trust principle was not sufficient to resolve the issue then before the court, i.e., whether an employer-administrator has "a duty to truthfully disclose, upon inquiry from plan participants or beneficiaries, whether it is considering amending the benefit plan." Id. at 409.  The court used a two-step approach to resolve the issue, asking

> [f]irst, should we find that an employer who chooses to speak about prospective plan changes has a fiduciary duty not to misrepresent those changes, and, if so, at what

point does that duty arise. . . [and asking s]econd,
should we also place upon the employer an affirmative
obligation to disclose a future plan change, and, if so,
at what point.

Id. at 424.  In response to its first query the court stated:

> With respect to an employer's misrepresentations, we
> conclude, as have all of the circuits that have
> considered this issue, that an employer, if it chooses to
> communicate about the future of a participant's plan
> benefits, has a fiduciary duty to refrain from
> misrepresentations. . . when an employer chooses, in its
> discretion, to communicate about future plan benefits, it
> does so as an ERISA fiduciary. In speaking it is
> exercising discretionary authority in administration of
> the plan, a specifically enumerated fiduciary function
> under ERISA. . . . When an ERISA plan administrator
> speaks in its fiduciary capacity concerning a material
> aspect of the plan, it must speak truthfully.

Id. at 424-25.  Nevertheless, in response to its second query
"whether an employer has a fiduciary duty to affirmatively disclose
whether it is considering amending its benefit plan," id. at 28,
the court stated flatly, "we conclude that no such duty exits."
Id.  In conclusion the court reasoned:

> We believe the two views we have promulgated--that an
> employer has no affirmative duty to disclose the status
> of its internal deliberations on future plan changes even
> if it is seriously considering such changes, but if it
> chooses in its discretion to speak it must do so
> truthfully--coalesce to form a scheme that accomplishes
> Congress's dual purposes in enacting ERISA of protecting
> employees' rights to their benefits and encouraging
> employers to create benefit plans.

Martinez, 338 F.3d at 430.

Plaintiff argues that because the Ehlmann court reaffirmed the
Fifth Circuit's earlier holding in McDonald, 60 F.3d at 237, that
ERISA required a fiduciary to disclose a change in its rate

schedule that caused a prohibitive premium to be set due to the impact that such a premium could have on small employers, that in this circuit, an affirmative duty to disclose "arises when a[n ERISA] fiduciary knows or should know of information that could have an extreme impact on participants' interests of which participants are unaware."[40]  See Ehlmann, 198 F.3d at 554-556.  The committee defendants argue that McDonald is distinguishable from this case because the disclosure required there concerned information about plan operations that could only have been significant to plan members, while the disclosures that plaintiff argues should have been made in this case concern information about Dynegy's earnings and business condition needed to correct misstatements made to the market and to apprise plan participants of the risks and appropriateness of investing in company stock.

     (b)   Application of ERISA's Disclosure Requirements

Citing the Ehlmann court's reliance on the canon of statutory construction that specific language rules general language, the committee defendants argue that Count II should be dismissed because the specific disclosure requirements mandated by ERISA do not include a need to disclose information about an employer-sponsor's earnings or business condition needed either to correct misstatements made to the market or to apprise plan participants of

---

[40]Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 29.

the risks and appropriateness of investing in company stock. Unlike the physician compensation rates at issue in <u>Ehlmann</u>, which constitute a discrete category of information that either Congress or the DOL could plausibly have included in readily related sections of ERISA or the regulations promulgated thereto had either entity intended to so obligate ERISA fiduciaries, the misrepresentations of cash flow, round-trip trading, and other fraudulent business practices that plaintiff alleges should have been disclosed to plan participants are not readily related to any specific sections of ERISA or the DOL's regulations. Consequently, the court concludes that the disclosures at issue in Count II are in fact governed by the general fiduciary duties set forth in 29 U.S.C. § 1104 and the case law interpreting them, and are not governed by any specific provisions of either the statute or the regulations.

> (i) **Disclosures about Dynegy's Earnings and Business Conditions Needed to Apprise Plan Participants of the Risks and Appropriateness of Investing in Company Stock**

Asserting that information about the accounting improprieties and other financial problems at Dynegy constitute special circumstances that could have an extreme impact on plan participants, plaintiff argues that the committee defendants breached their duties of loyalty and prudence by failing to disclose to plan participants that the company engaged in these

actions, and that these actions caused its stock price to be inflated and its stock to be a dangerous long-term retirement investment.

The committee defendants argue that plaintiff's claim that they breached an ERISA fiduciary duty to disclose information about Dynegy's earnings and business conditions needed to apprise plan participants about the risks and appropriateness of investing in company stock should be dismissed because ERISA does not obligate plan fiduciaries to provide investment advice to plan participants. In support of this argument the committee defendants cite Uselton v. Commercial Lovelace Motor Freight, Inc., 940 F.2d 564, 582 (10th Cir.), cert. denied, 112 S.Ct. 589 (1991), for its conclusion that "ERISA does not, as . . . the Securities Acts require, compel the disclosure of 'relevant, accurate information upon which to base an investment decision.'"[41]   The committee defendants also argue that this claim should be dismissed for any period prior to January 1, 2002, because prior to that date plan participants could not have acted on any information that allegedly should have been disclosed. In support of this argument the committee defendants assert that

---

[41]Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 26.   Although defendants also cite 29 C.F.R. § 2550.404(c)-1(c)(4) ("[a] fiduciary has no obligation under part 4 or Title I of the Act to provide investment advice to a participant or beneficiary under an ERISA section 404(c) plan"), in support of this argument, the court finds this argument inapposite because plaintiff has not alleged that the Dynegy Plan was a § 404(c) plan and, in fact, argues in response to defendants' motion to dismiss that it is not.  See Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 38.

prior to January 1, 2002, plan participants were neither able to invest their employee contributions in company stock nor to convert Dynegy's employer contributions from company stock.

The few cases in which the Fifth Circuit has addressed the affirmative duty to disclose imposed by ERISA all involved allegations that disclosures were needed to correct and/or clarify representations made to plan participants by plan fiduciaries acting in their fiduciary capacity. See McDonald, 60 F.3d at 237 (recognizing affirmative duty to disclose acceleration feature of new rate schedules); Martinez, 338 F.3d at 425 ("whenever an employer exercises a fiduciary function it must speak truthfully"). These cases establish that when the BPC defendants distributed the 1/02 SPD that encouraged plan participants to carefully review Dynegy's SEC filings, they also triggered an affirmative duty to disclose material adverse information that the BPC defendants knew or should have known regarding the risks and appropriateness of investing in company stock. The court concludes, therefore, that plaintiff has stated a breach of fiduciary duty claim against the BPC defendants for failing to disclose information material to investing in company stock from January 1, 2002. However, because plaintiff has failed to allege that plan fiduciaries made any representations to plan participants regarding investment in company stock prior to publication of the 1/02 SPD, and because both plaintiff's allegations and the arguments that she has submitted in response to the committee defendants' motions to

dismiss demonstrate that prior to January of 2002 plan participants could neither invest their own employee contributions in company stock nor convert Dynegy's employer contributions from company stock,[42] the court concludes that Count II is not actionable for any period prior to January of 2002.

### (ii) Disclosures about Dynegy's Earnings and Business Conditions Needed to Correct Misrepresentations to the Market

Citing McDonald, 60 F.3d at 235-237, plaintiff argues that the Fifth Circuit expressly recognizes that ERISA fiduciaries have an affirmative duty to disclose material information on their own initiative when the fiduciary is aware of special circumstances that could have an extreme impact on the Plan and its participants.[43]  Asserting that information about the accounting improprieties and other financial problems at Dynegy constitute special circumstances that could have an extreme impact on plan participants, plaintiff argues that her allegations that the committee defendants knew or should have known that the company engaged in these actions are sufficient to state a claim for breach of an affirmative duty to disclose information about Dynegy's earnings and business conditions needed to correct misrepresentations to the market.[44]  The committee defendants argue that this

---

[42]See § V.B.3.(a), below; and TAC ¶ 63.

[43]Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, pp. 27-28.

[44]Id. at p. 29.

claim should be dismissed because misrepresentations made to the market do no constitute special circumstances that could have an extreme impact on the Plan and its participants.

In <u>Varity</u> the Supreme Court chose not to "reach the question whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries." 116 S.Ct. at 1075. The few cases in which the Fifth Circuit has discussed ERISA's disclosure duties acknowledged that an affirmative duty to disclose can arise when special circumstances threaten a potentially extreme impact on a plan as a whole, but provide little guidance for determining which circumstances are capable of giving rise to such a duty. <u>See</u> <u>Ehlmann</u>, 198 F.3d at 556 (citing <u>McDonald</u>, 60 F.3d at 234).

Concern for uninformed and vulnerable plan participants has increasingly led some courts to conclude that circumstances known to the plan fiduciary can give rise to an expanded affirmative duty to disclose information necessary to protect a participant or beneficiary because that participant or beneficiary "may have no reason to suspect that it should make inquiry into what may appear to be a routine matter." <u>Glaziers & Glassworkers Union Local</u> <u>No. 252 Annuity Fund v. Newbridge Securities, Inc.</u>, 93 F.3d 1171, 1181 (3d Cir. 1996). <u>See also</u> <u>Griggs v. E.I. Dupont de Nemours &</u> <u>Co.</u>, 237 F.3d 371, 380 (4th Cir. 2001)("ERISA administrators have a fiduciary obligation 'not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory

disclosures.' . . . Moreover, a fiduciary is at times obligated to affirmatively provide information to the beneficiary . . . [including] 'facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection.'"); <u>Bins v. Exxon Co. U.S.A.</u>, 189 F.3d 929 (9th Cir. 1999)("We believe that once an ERISA fiduciary has material information relevant to a plan participant or beneficiary, it must provide that information whether or not it is asked a question."), <u>on rehearing en banc</u>, 220 F.3d 1042, 1048-49 (9th Cir. 2000)(when a proposed change in retirement benefits becomes sufficiently likely and therefore material, the employer has a duty to provide complete and truthful information); <u>Schmidt v. Sheet Metal Workers' Nat. Pension Fund</u>, 128 F.3d 541, 546-47 (7th Cir. 1997), <u>cert. denied</u>, 118 S.Ct. 1513 (1998)("A plan fiduciary may violate its duties . . . either by affirmatively misleading plan participants about the operations of a plan, or by remaining silent in circumstances where silence could be misleading."). Common to all of these decisions is the requirement that the fiduciary charged with the duty to disclose have actual knowledge of material information, which he knows or should know the plan participants do not know, but need to know, to protect their interests.

Assuming without deciding that plaintiff's allegations regarding accounting improprieties and other financial problems at Dynegy constitute special circumstances capable of having an

extreme impact on plan participants, the court nevertheless concludes that plaintiff's allegations are insufficient to state a failure to disclose claim because they do not allege that the committee defendants had actual knowledge of the material information that they allegedly should have disclosed. Plaintiff's failure to allege what the committee defendants allegedly knew, when they allegedly knew it, or why it was material, leaves her allegation of actual knowledge insufficient to state a failure to disclose claim because her allegations fail to put the defendants on notice of what they were allegedly duty bound to disclose, when they were duty bound to disclose it, or why it was material. <u>See</u> <u>Glaziers</u>, 93 F.3d at 1181 (circumstances known to the plan fiduciary can give rise to an expanded affirmative duty to disclose information necessary to protect a participant). <u>Accord</u> <u>Enron</u>, 284 F.Supp.2d at 556.  Plaintiff's failure to allege either that an appropriate investigation would have revealed Dynegy's financial improprieties or that the committee defendants had notice of improprieties that they failed to investigate leaves her allegation of constructive knowledge similarly insufficient to state a failure to disclose claim. <u>See</u> <u>Kuper v. Iovenko</u>, 66 F.3d 1447, 1460 (6th Cir. 1995)(the failure to fulfill an investigatory responsibility will not result in a breach unless an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident); <u>Barker v. American Mobil Power Corp.</u>, 64 F.3d 1397, 1403 (9th Cir. 1995)(an ERISA fiduciary has a duty to

investigate suspicions he has with respect to plan funding and maintenance).

The reason the court has concluded that plaintiff's allegations that the BPC defendants "knew or should have known" are sufficient to support a claim in Count I and in Count II regarding misstatements made to plan participants about investing in company stock, but are insufficient to support a claim in Count II regarding misstatements made to the market about the company's financial condition, is that ERISA imposes a fiduciary duty on the BPC defendants to investigate before they speak, to speak truthfully, and to correct their own misstatements, but does not impose a fiduciary duty on them to initiate disclosures needed to correct the misstatements of others absent knowledge of material information that they know the plan participants do not know, but need to know, to protect their interests. See McDonald, 60 F.3d at 237 (duty to disclose does not arise until plan fiduciaries know the information, and either know or should know that plan participants do not know the information, but need to know it to protect their interests). See also Glaziers, 93 F.3d at 1181 (circumstances known to the plan fiduciary can give rise to an expanded affirmative duty to disclose information necessary to protect a participant).

### (c)  Conclusions as to Count II

For the reasons explained above, the court concludes that plaintiff has stated a breach of fiduciary duty claim against the

committee defendants arising from their failure to disclose information about Dynegy's earnings and business condition needed to prevent plan participants from being misled by the statement contained in Appendix A of the 1/02 SPD that "encouraged" them "to carefully review" Dynegy's SEC filings "for additional information relevant to investing in the Dynegy Stock Fund,"[45] but has failed to state a breach of fiduciary duty claim against the committee defendants arising from their failure to disclose information about Dynegy's earnings and business condition needed to correct misstatements made to the market. Accordingly, the court concludes that the allegations asserted in Count II are sufficient only to state a claim against those committee defendants who were members of the BPC between January of 2002 and January of 2003 and are insufficient to state a claim against members of the RBPC.

2.   Count IV

In Count IV plaintiff alleges that the committee defendants breached the duty to eliminate inappropriate investment options. TAC ¶¶ 264-271.  Plaintiff specifically alleges that the committee

---

[45]Although the committee defendants also argue that Count II should be dismissed because the Plan itself imposes no obligation on them to provide participants with the kinds of business data and insights the plaintiff seeks, but rather "requires only that the [c]ommittees prepare, file, and distribute 'such information and material as is required by the reporting and disclosure requirements of the Act [i.e., ERISA],'" Docket Entry No. 38, p. 25 and Ex. A § 13.6(g), assuming without deciding that defendants have correctly characterized the Plan's provisions, those provisions would lead the court to the same conclusions already reached pursuant to its preceding analysis.

defendants breached the fiduciary duties of loyalty and prudence imposed by 29 U.S.C. § 1104(a)(1)(A)-(B) by failing to investigate and monitor the suitability of Dynegy stock as an investment option for the Plan.

> By no later than the beginning of the Class Period and thereafter during the Class Period, these Defendants could not have reasonably made a determination that Dynegy stock was a suitable investment for the Plan, either for a participant's discretionary account or for Dynegy's match. In fact, by the beginning of the Class Period, if not before, Dynegy stock was an unsuitable investment option for the Plan because it was trading at a price inflated by materially misleading information or omissions concerning (1) Project Alpha, (2) the round-trip wash trades, (3) Dynegy's role in the manipulation of energy prices, (4) financing and liquidity concerns, (5) the manipulation and false reporting of financial results from 1999 to 2001 and other false or misleading information provided to the market . . .

TAC ¶ 269 (emphasis added). Plaintiff also alleges that pursuant to the governing plan documents the committee defendants "had the authority to select, add and eliminate investment alternatives," TAC ¶ 267; "knew or were in a position to discover the facts relevant to the suitability and fair pricing of Dynegy stock at all relevant times," TAC ¶ 268; "may not blindly follow the plan document if doing so leads to an imprudent result," TAC ¶ 270; and breached their fiduciary duties of loyalty and prudence by "continuing to accept the match in Dynegy stock or permitting the acquisitions of Dynegy stock as an investment alternative in the Plan during the Class Period without insisting on corrective disclosures to the market," TAC ¶ 271.

The committee defendants argue that Count IV should be dismissed because plaintiff's allegations that they should have eliminated Dynegy stock as the employer match is barred by the settlor doctrine, and because plaintiff's allegations that they should have eliminated Dynegy stock as an investment option for employee contributions is barred by ERISA § 404(c).

### (a)   Employer Matching Contributions

The committee defendants argue that plaintiff's claim that they breached ERISA's fiduciary duties of loyalty and prudence by "continuing to accept the [c]ompany match in Dynegy stock," TAC ¶ 271, should be dismissed because under the settlor doctrine they had no discretion or fiduciary authority with respect to accepting employer contributions in company stock.[46]   Plaintiff argues that this claim should not be dismissed because as the plan administrators and named plan fiduciaries charged with managing plan assets, "the [c]ommittee [d]efendants were the parties responsible as fiduciaries for accepting employer stock to satisfy the employer's matching contribution on behalf of the [p]lan."[47] Plaintiff also argues that plan administrators always have discretion to disregard the terms of a plan that violate ERISA.[48]

---

[46]Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 29; Defendants' Reply, Docket Entry No. 74, p. 16.

[47]Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 33.

[48]Id. at p. 35.

The Dynegy Plan provides that

> Employer Matching Contributions <u>shall</u> be contributed to
> the Trust in the form of shares of Company Stock.  The
> shares of Company Stock that are so contributed shall be
> valued at the closing price of such stock on the New York
> Stock Exchange, Inc. as reported by The Wall Street
> Journal in the New York Stock Exchange Composite
> Transactions for the last day of the month for which the
> contribution is made . . .

Ex. A § 3.3(c)(emphasis added).[49]  The Dynegy Plan also provides
that "the Committee shall be the Plan 'administrator' and shall be
the 'named fiduciary'" with respect to the general administration
of the Plan (<u>except as to the investment of the assets of the Trust
Fund</u>)."  Ex. A § 13.1 (emphasis added).  <u>See also</u> Ex. B § 13.1.
Section 15.2 provides that "[e]ach fiduciary . . . shall have only
those specific . . . responsibilities . . . as are specifically
given him under the [p]lan" and that (with one inapplicable
exception) "the Trustee shall have the sole responsibility for the
administration, investment, and management of the assets held under
the Plan."  Ex. A § 15.2.

Because the Dynegy Plan not only required that the employer
match be made in the form of shares of company stock contributed
directly to the trust fund, but also expressly precluded the
committee defendants from serving as plan administrator or named
fiduciary with respect to investment of the trust assets, the
committee defendants argue that acceptance and investment of

---

[49]See TAC ¶ 63 (acknowledging that the Plan provided for all
employer matching contributions to be made in the form of company
stock).

employer contributions in the form of company stock is a design feature of the Plan over which they lack fiduciary authority.[50]  See Pegram, 120 S.Ct. at 2153 ("The specific payout detail of the plan was . . . a feature that the employer as plan sponsor was free to adopt without breach of any fiduciary duty under ERISA, since an employer's decisions about the content of a plan are not themselves fiduciary acts."); Hughes, 119 S.Ct. at 763 ("ERISA's fiduciary duty requirement simply is not implicated where Hughes, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated.").

Plaintiff does not dispute that the Dynegy Plan requires employer matching contributions to be made solely in the form of company stock, that this requirement is a design feature of the Plan, or that the Plan precludes the committee defendants from serving as plan administrator or named fiduciary with respect to investment of the trust assets.[51]  Nor does plaintiff dispute that the committee defendants have a duty to adhere to the terms of the Plan.  Because the Dynegy Plan not only required the employer match to be made exclusively in company stock contributed directly to the

---

[50]Defendants' Reply, Docket Entry No. 74, p. 16.

[51]See TAC ¶ 274 where in Count V plaintiff alleges that the committee defendants had only "the authority to direct the Trustee with respect to investments in employer stock" (emphasis added). See also Ex. A § 15.2 giving "the sole authority to appoint and remove the Trustee" to Dynegy's directors.

trust fund, but also expressly precluded the committee defendants from serving as plan administrator or named fiduciary with respect to investment of trust funds, the court concludes that plaintiff will not be able to prove any set of facts capable of establishing that the committee defendants breached fiduciary duties of loyalty and prudence owed to the Plan by continuing to accept the employer match in company stock because their fiduciary duties did not extend to either the acceptance or the investment of employer matching contributions.[52]  See TAC ¶ 271.

---

[52]Citing In re Ikon Office Solutions, Inc. Sect. Litig. (Whetman v. Ikon), 86 F.Supp.2d 481, 492-493 (E.D. Pa. 2000), plaintiff argues that where strict adherence to the terms of a plan would result in a breach of fiduciary duty, ERISA requires plan fiduciaries to violate the explicit terms of a plan.  In Ikon the district court denied a motion to dismiss ERISA fiduciary breach claims based on continued investment in the employer's stock.  The court reasoned that although

> an ESOP [Employee Stock Ownership Plan] fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision . . . plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities.

86 F.Supp.2d at 492.  Citing Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995), the court concluded that "it would be premature to dismiss even a portion of the ERISA complaint without giving plaintiffs an opportunity to overcome the presumption."  Id.  Reading Moench broadly the Ikon court found it unnecessary to decide whether the plan at issue merely encouraged or actually required the employer contribution to be invested only in company stock.  86 F.Supp.2d at 492-493.  Assuming without deciding that the abuse of discretion standard applied in Ikon is the correct standard to apply in this case, the court concludes that plaintiff's allegations are insufficient to state a breach of fiduciary duty claim because she alleges only that the continued investment in employer stock was unreasonable, not that it constituted an abuse of discretion.  TAC ¶ 269.

(b)   Investment Option for Employee Contributions

The committee defendants argue that plaintiff's claim that they breached their fiduciary duties of loyalty and prudence by failing to eliminate the Dynegy Stock Fund as an investment option for employee contributions should be dismissed because 29 U.S.C. § 1104(c) exempts them from liability for any losses stemming from employee-directed investments.  Section 1104(c) provides "no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control."[53]

Plaintiff responds that § 1104(c) is not applicable to this claim because the committee defendants prevented plan participants from exercising control by concealing material, non-public facts regarding investment in the Dynegy Stock Fund.[54]  Asserting that the committee defendants bear the burden of proving § 1104(c)'s applicability, plaintiff argues that this claim should not be dismissed on the pleadings.[55]

Although the parties dispute § 1104(c)'s applicability to the Dynegy Plan, they do not dispute that the committee defendants "had

---

[53]Defendants' Memorandum of Law in Support of Motion to Dismiss, Docket Entry No. 38, p. 30.

[54]Plaintiff's Memorandum in Opposition, Docket Entry No. 69, pp. 38-39.

[55]Id. at p. 39.

the duty to set out the menu of investment options."[56]  Nor do they
dispute that the Dynegy Stock Fund became available as an
investment option for employee-directed contributions only in
January of 2002.  The committee defendants do not dispute that the
duty to set out the menu of available investment options is subject
to the fiduciary duties of loyalty and prudence, which include the
duty to eliminate investment options that pose unreasonable risks
of loss to the Plan.[57]  Plaintiff alleges that the committee
defendants breached their fiduciary duties of loyalty and prudence
by offering the Dynegy Stock Fund or by failing to eliminate it as
an investment option for employee-directed accounts because they
either knew or were in a position to discover facts about the
stock's suitability and fair pricing that could not reasonably have
allowed them to conclude that it was a suitable investment for the
Plan.  The court concludes that these allegations are sufficient to

_____

[56]Defendants' Memorandum of Law in Support of Motion to
Dismiss, Docket Entry No. 38, p. 38, stating that "although the
Plans Committee Defendants had the duty to set out the menu of
investment options, participants decided how to diversify their
contributions among them."

[57]The DOL has emphasized that the act of designating investment
alternatives in an ERISA section 404(c) plan is a fiduciary
function to which the limitation on liability provided by section
404(c) is not applicable.  See Letter from the Pension and Welfare
Benefits Administration, U.S. Dept. of Labor, to Douglas O. Kant,
1997 WL 1824017, *2 (Nov. 26, 1997)("The responsible plan
fiduciaries are also subject to ERISA's general fiduciary standards
in initially choosing or continuing to designate investment
alternatives offered by a 404(c) plan.")(cited in Enron, 284
F.Supp.2d at 578).

state a claim for breach of fiduciary duty against the committee defendants regardless of § 1104(c)'s applicability. Because the parties agree that the Dynegy Stock Fund only became an investment option for employee-directed accounts in January of 2002, the court concludes that this claim is not actionable for any period preceding January 1, 2002.[58]

   (c)   Conclusions as to Count IV

   The court concludes that plaintiff has not stated a claim for breach of fiduciary duty against the committee defendants for accepting and investing employer matching contributions in Dynegy stock, but has stated a claim for breach of fiduciary duty against them for offering and failing to eliminate the Dynegy Stock Fund as an investment option for employee-directed accounts.

   3.   Count V

   In Count V, TAC ¶¶ 272-278, plaintiff alleges that the committee defendants breached the fiduciary duty to comply with documents and instruments governing the plan imposed by 29 U.S.C. § 1104(a)(1)(D) by "failing to direct the diversification of plan assets out of employer stock and into diversified investments throughout the class period." TAC ¶ 278. Plaintiff alleges that "[p]ursuant to the [g]overning [p]lan [d]ocuments, the [t]rust

---

   [58]See Ex. A § 5.1, and TAC ¶ 62 (recognizing that the Dynegy Stock Fund was not an investment option for employee-directed contributions until January of 2002).

[a]greement, and the [r]esolutions," the committee defendants "had the authority to direct the [t]rustee with respect to investments in employer stock, including the authority to require the sale and reinvestment of those assets."  TAC ¶ 274.  Plaintiff alleges that § 15.1 of the Plan provided that Article XV would "control over any contrary, inconsistent or ambiguous provisions contained in the Plan," TAC ¶ 275; that § 15.3 of the Plan provided that "[e]ach fiduciary under the Plan . . . shall discharge his duties and responsibilities with respect to the Plan . . . (c) by diversifying the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is prudent not to do so . . .," TAC ¶ 276; and that "the duty to diversify contained in Article XV of the Plan contained no exception for investments in employer stock."  TAC ¶ 276.  The committee defendants argue that Count V should be dismissed because the Plan imposes no duty to diversify employer matching contributions,[59] and because plaintiff's allegations do not constitute a prima facie showing that the employee-directed contributions were not diversified.[60]

    (a)  Employer Matching Contributions

Asserting that "[t]he [P]lan makes unambiguously clear . . . that it 'is specifically authorized to acquire and hold up to 100% of its assets in [c]ompany [s]tock so long as [c]ompany [s]tock is

---

[59]Defendants' Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, p. 33.

[60]Id. at pp. 32-33.

a 'qualifying employer security,'" Ex. A § 19.5, the committee
defendants argue that the Plan is an eligible individual account
plan under 29 U.S.C. § 1107(d)(3)(B), and that as such, employer
stock is exempt from ERISA's general diversification requirement.[61]

> In the case of an eligible individual account plan [as
> defined in § 407(d)(3)], the diversification requirement
> of paragraph 1(C) and the prudence requirement (only to
> the extent it requires diversification) of paragraph 1(B)
> is not violated by acquisition or holding of qualified
> real property or qualifying employer securities [as
> defined in § 407(d)(4) and (5)].

29 U.S.C. § 1104(a)(2).   The committee defendants argue that
Count V should be dismissed because "[i]t is inconceivable that a
plan designed to exempt employer securities from the <u>statutory</u> duty
to diversify would re-impose that same duty in the four corners of
the agreement itself."[62]  For the reasons set forth below, the court
agrees that the Dynegy plan should not be read to re-impose such a
duty.

Asserting   that   §   15.3   <u>requires</u>   Plan   investments   to   be
diversified unless under the circumstances diversification is not
prudent, while § 19.5 merely <u>authorizes</u> but does not mandate the
investment of Plan assets in Dynegy stock, plaintiff argues that
"the [P]lan's plain language makes clear that all plan fiduciaries
had a duty to diversify the Plan's holdings."[63]  Plaintiff argues

---

[61]<u>Id.</u> at p. 33.

[62]<u>Id.</u> at p. 34.

[63]Plaintiff's Memorandum in Opposition, Docket Entry No. 69,
p. 42.

that because § 19.5 merely permits, but does not require, employer matching contributions to be invested in company stock, Count V should not be dismissed because it challenges the committee defendants' decision to ignore a different and overriding plan requirement.[64]  In support of her argument plaintiff cites <u>Enron</u>, 284 F.Supp.2d 668-669, as a case in which plan terms identical to those at issue here were found to support a similar claim.[65]  While plaintiff is correct that § 19.5 does not mandate the investment of employer matching contributions in Dynegy stock, other provisions of the plan do, and these provisions distinguish the Dynegy Plan from the <u>Enron</u> plan.

Section 3.3(c) unambiguously provides that "Employer Matching Contributions <u>shall</u> be contributed to the Trust in the form of <u>shares of Company Stock</u>."  Ex. A § 3.3(c) (emphasis added).  Section 4.1(c) provides that "Employer Matching Contributions made by the Employer on a Member's behalf <u>shall</u> be allocated to such Member's Employer Contribution Account."  Ex. A § 4.1(c)(emphasis added).  Prior to January of 2002, § 5.1 of the Plan provided that "Employer Matching Contributions made to the Plan . . . <u>shall</u> be invested in the Company Stock Fund," Ex. B § 5.1, and that ". . . a Member <u>may not</u> convert the investment designation of any amounts allocated to the Company Stock Fund."  Ex. B § 5.2(c)(emphasis

_____

[64]<u>Id.</u> at p. 45.

[65]<u>Id.</u> at pp. 42-43.

added).  <u>See also</u> TAC ¶ 64.  Effective January 1, 2002, the Plan was amended to provide that "Employer Matching Contributions . . . <u>shall</u> initially be invested in the Company Stock Fund," Ex. A § 5.1, and that

> [a] Member <u>may</u> elect to convert his investment designation with respect to the amounts already allocated to his Accounts (including, without limitation, the conversion of the investment designation with respect to amounts allocated to the Company Stock Fund pursuant to Section 5.1)(emphasis added).

Ex. A § 5.2(c).  These provisions establish that as a matter of plan design, employer contributions were allocated to participants' accounts in the form of shares of company stock invested in the Company Stock Fund, that prior to January of 2002 participants were precluded from converting the investment designation of any amounts allocated to the Company Stock Fund, and that after January of 2002 participants were able to convert the investment designation of amounts allocated to the Company Stock Fund.  These provisions make it clear that once employer matching contributions were allocated to participants' accounts the ability to diversify them out of company stock was governed by the investment funds provisions of Article V and not by the fiduciary provisions of Article XV.  These provisions of the Dynegy Plan also distinguish it from the plan at issue in <u>Enron</u>, 284 F.Supp.2d at 668-670.

The corresponding provision of Enron's plan relied on by that court was "Section V.16 . . . [which] provides that Enron's 50% match of employees' contributions would be made 'primarily' in

Enron stock." <u>Enron</u>, 284 F.Supp.2d at 668.   Reasoning "that 'primarily' means 'for the most part,' not 'all,' and that the leeway provides the plan fiduciaries with considerable discretion, which they allegedly did not exercise prudently or loyally," <u>id.</u> at 670, the court concluded that the plaintiffs' complaint stated a claim for co-fiduciary liability related to the failure to diversify.  <u>Id</u>.  The <u>Enron</u> court's analysis shows that the Enron plan was not, as plaintiff asserts, <u>identical</u> to the Dynegy plan.[66] Because the terms of the plans differ, the court is not persuaded that plaintiff's allegations warrant the conclusion reached in <u>Enron</u>.   Instead, the court concludes that the plan documents require the employer match to be made in company stock, that plaintiff is unable to prove any set of facts capable of establishing that the committee defendants breached the fiduciary duty to comply with documents and instruments governing the Plan by failing to direct the diversification of employer matching contributions out of employer stock and into diversified investments, and that plaintiff has failed to state a claim for which relief may be granted regarding this aspect of Count V.

(b)  Employee Contributions

Citing <u>Metzler v. Graham</u>, 112 F.3d 207, 209 (5th Cir. 1997), the committee defendants argue that Count V should be dismissed because plaintiff has failed to allege facts demonstrating that the

---

[66]<u>Id.</u> at p. 42.

Plan is not diversified "on its face."   Because plaintiff alleges that the self-directed portion of the Dynegy Plan has always included an array of investment options and does not, therefore, allege that the Plan was not diversified on its face, TAC ¶¶ 61-62, the court concludes that plaintiff has failed to state a claim that the committee defendants breached the fiduciary duty to comply with documents and instruments governing the Plan imposed by 29 U.S.C. § 1104(a)(1)(D) by failing to direct the diversification of the employee contributions.

4.   <u>Count VII</u>

In Count VII plaintiff alleges that the committee defendants breached the duty to avoid conflict of interests and promptly resolve them when they occur.   TAC ¶¶ 264-271.   Plaintiff specifically alleges that the committee defendants breached the fiduciary duty of loyalty imposed by 29 U.S.C. § 1104(a)(1)(A) by

> continuing to allow Company stock as a Plan investment during the Class Period, by failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plan's investment in Company stock and the information provided to participants and beneficiaries concerning it, and generally failing to take whatever steps were necessary to ensure that the Plan fiduciaries did not suffer from a conflict of interest, including notifying the Department of Labor about the information which made employer stock an unsuitable investment for the Plan.

TAC ¶ 287.

The committee defendants argue that Count VII should be dismissed because "[n]owhere in the [c]omplaint does Plaintiff

explain the source or nature of the conflict, set forth specific facts demonstrating that an <u>actual</u> conflict existed or assert that the supposed conflict benefitted these Defendants."[67]   Citing 29 U.S.C. § 1108(c)(3), defendants assert that ERISA recognizes that fiduciaries often have dual status as committee member and corporate officer, and that to the extent this count is based on their "continuing to allow [c]ompany stock as a [p]lan investment during the Class Period" and "continuing to accept the [employer] match in Dynegy stock or permitting the acquisitions of Dynegy stock as an investment alternative in the [p]lan," that it should be dismissed for the same reasons that Counts IV and V should be dismissed.[68]   Defendants also argue that plaintiff's conclusory assertions of a duty to engage independent fiduciaries and/or advisors to make judgments concerning the Plan's investment in company stock, TAC ¶ 287, and a duty to notify the DOL of information that allegedly made the stock an unsuitable investment are not actionable because plaintiff has failed to allege either that the hiring of independent advisors or notice to the DOL would have prevented the loss allegedly suffered by the Plan.[69]

Plaintiff's only response in opposition is to assert that "although an ERISA fiduciary 'may wear many hats . . . [w]hen

---

[67]Defendants' Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, pp. 38-39.

[68]<u>Id.</u> at p. 39.

[69]<u>Id.</u> at pp. 39-40 n.58.

making fiduciary decisions . . . a fiduciary may wear only his fiduciary hat,'"[70] and to argue that Count VII should not be dismissed because it "asserts that the [c]ommittee [d]efendants failed to take necessary steps to ensure that they did not suffer from a conflict of interest."[71]  Although plaintiff cites Bussian v. RJR Nabisco, Inc., 223 F.3d 286, 299 (5th Cir. 2000), in support of her argument, the Bussian court merely commented that

> [t]he presence of conflicting interests imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised. . .  "The level of precaution necessary to relieve a fiduciary of the taint of a potential conflict should depend on the circumstances of the case and the magnitude of the potential conflict."  Metzler, 112 F.3d at 213.   To ensure that actions are in the best interests of plan participants and beneficiaries, fiduciaries under certain circumstances may have to "at a minimum" undertake an "intensive and scrupulous independent investigation of [the fiduciary's] options."  Leigh I, 727 F.2d at 1250126 (citing Donovan v. Bierwirth, 680 F.2d 263, 272 (2d Cir.), cert. denied, 103 S.Ct. 488 (1982)).   In some instances, the only open course of action may be to appoint an independent fiduciary.

These comments presuppose the presence of an identifiable conflict of interests and harm stemming therefrom.  Because plaintiff has not alleged either an identifiable conflict or harm, and has similarly failed to allege either that the committee defendants benefitted from that conflict or, if so, how they benefitted, and has not cited the court to any case that has recognized allegations

---

[70]Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 46.

[71]Id.

like those asserted in Count VII as actionable, the court concludes that plaintiff has failed to state a conflict of interest claim because she has failed to allege an identifiable conflict that either benefitted the defendants or caused an identifiable harm to the Plan.

## C.   Claims Asserted Against Dynegy, the Director Defendants, and the Human Resource Director Defendants

Plaintiff alleges that Dynegy, Dynegy's Board of Directors, and members of its Human Resources Committee (1) breached their duty to disclose and inform the BPC and/or the RBPC incident to the duty to appoint and monitor their members, TAC ¶¶ 257-263 (Count III), and (2) failed to monitor the BBPC and/or the RBPC, TAC ¶¶ 284-287 (Count VI).  Dynegy's foreign directors, Stephen J. Brandon and Paul N. Woollacott, argue that these claims should be dismissed because the court lacks personal jurisdiction over them. The remaining defendants argue that these claims should be dismissed for failure to state a claim on which relief may be granted.

### 1.   Foreign Directors

Director Defendants Brandon and Woollacott argue that the court lacks personal jurisdiction over them because they are not residents of Texas and because plaintiff has not alleged facts establishing that they had any contact with Texas, i.e., the forum state, sufficient to give rise to the court's jurisdiction.

Specifically, Brandon and Woollacott argue that they did not serve as directors when any events giving rise to this action occurred. Plaintiff's only response is that Brandon and Woollacott served as Dynegy directors until 2000.[72] The court has concluded that the only events alleged by plaintiff that give rise to claims against the committee defendants that are sufficient to state claims against them occurred after 2000, i.e., issuance and distribution of the 01/02 SPD and availability of the Dynegy Stock Fund as an investment option for plan participants beginning in January of 2002. The court therefore concludes that the claims asserted against Brandon and Woollacott should be dismissed because plaintiff's allegations are insufficient to establish the court's personal jurisdiction over them. See Bannistor, 287 F.3d at 405 (citing 29 U.S.C. § 1109(b) ("No fiduciary shall be liable with respect to a breach of fiduciary duty . . . if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.")).

2.   Domestic Directors

Dynegy, Dynegy's Board of Directors, and the HRC defendants argue that Counts III and VI should be dismissed because they have breached no duties by failing either to inform or to monitor the committee defendants, and because the committee defendants have breached no duties of their own.

---

[72]Id. at p. 60.

(a)   Underlying Breaches

The parties do not dispute that absent breaches by the committee defendants there can be no liability for breach of a failure to inform them or to monitor their performance.  Because the court has concluded that plaintiff's allegations are sufficient to state claims against the BPC defendants for breach of the fiduciary duty not to make affirmative material misrepresentations based on representations made in the 01/02 SPD (Count I), breach of the fiduciary duty to disclose and inform based on representations made in the 01/02 SPD (Count II), and breach of the fiduciary duty to eliminate inappropriate investment options based on availability of the Dynegy Stock Fund as an investment option for employee-directed contributions from January of 2002 (Count IV), the court is not persuaded that the committee defendants have breached no duties.

(b)   Individual Director Defendants

Individual director defendants, Jeffery M. Lipton, Jack S. Mustoe, A. Terence Poole, Peter J. Robertson, Stanley I. Rubenfeld, and Patricia A. Woertz, argue that the claims asserted against them in Counts III and VI should be dismissed because none of the events underlying the claims recognized as stated against the BPC defendants occurred while they (i.e., these specific individuals) served as plan fiduciaries.  Plaintiff responds that she has alleged "that each of the Individual Director Defendants served the

Plan in a fiduciary capacity at least 'until 2000.'"[73]  Because the only events that the court has concluded are sufficient to state claims against the BPC defendants occurred after 2000, i.e., issuance of the 01/02 SPD and availability of the Dynegy Stock Fund as an investment option for employee contributions from January of 2002, the court concludes that Counts III and VI fail to state claims against these individual director defendants.  See Bannistor, 287 F.3d at 405 ("No fiduciary shall be liable with respect to a breach of fiduciary duty . . . if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.")).

(c)  Dynegy, Dynegy's Board, and HRC Defendants

Unless the remaining corporate defendants are named as fiduciaries in the governing plan documents, their status as fiduciaries is controlled by ERISA's definition of fiduciary, which is functional in nature:

> A person is a fiduciary with respect to a plan to the extent (i) he exercises <u>any discretionary authority or discretionary control respecting management of such plan</u> or exercises any authority or control respecting the management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

---

[73]<u>Id.</u> at p. 58.

29 U.S.C. § 1002(21)(A)(emphasis added).  <u>See</u> <u>Pegram</u>, 120 S.Ct. at
2152-2153 ("in every case charging breach of ERISA fiduciary duty
. . . the threshold question is . . . whether that person was
acting as a fiduciary (that is, was performing a fiduciary
function) when taking the action subject to complaint").  A company
cannot be subject to fiduciary liability simply by virtue of its
role as plan sponsor.  <u>Hughes</u>, 119 S.Ct. at 763.  Nor can its
officers and directors be regarded as fiduciaries simply because of
their corporate position.  <u>Sommers I</u>, 793 F.2d at 1460 (jury could
not infer that defendants had control over plan trustees, giving
rise to fiduciary obligations merely from their status as an
officer and director, or merely from the their power to appoint the
trustees).  The corporate defendants can be subject to fiduciary
liability only if they were acting in a fiduciary, as opposed to a
corporate, capacity, and the act—or omission—complained of was
within the scope of their fiduciary duties.  In <u>Sommers I</u> the Fifth
Circuit instructed that "if an employer and its board of directors
have no power with respect to a plan other than to appoint the plan
administrator and the trustees, then their fiduciary duty extends
only to those functions.  793 F.2d at 1460.  The DOL has expressed
the same view, stating that where corporate defendants are charged
with the authority to appoint, their "responsibility, and,
consequently, their liability, is limited to selection and
retention of fiduciaries . ."  29 C.F.R. § 2509.75-8, Question D-4.
<u>See also</u> <u>Crowley</u>, 234 F.Supp.2d at 230 (applying this view).

### (i)  Count III

Plaintiff alleges in Count III that Dynegy, the Director Defendants, and the Human Resource Director Defendants breached their duty to disclose and inform the BPC and/or the RBPC incident to the duty to appoint and monitor them.   TAC ¶¶ 257-263. Plaintiff specifically alleges that these defendants breached the fiduciary duties of loyalty and prudence imposed by 29 U.S.C. § 1104(a)(1)(A)-(B) when

> Dynegy, acting through the Director Defendants, the Director Defendants acting through the Human Resources Director Defendants, and the Human Resources Director Defendants had a duty pursuant to the aforementioned sections of ERISA to disclose to and inform the Benefit Plans Committee Defendants and/or the Retirement/Benefit Plans Committee Defendants of all material matters which the Benefit Plans Committee and/or the Retirement/Benefit Plans Committee Defendants reasonably needed to know to fulfill their duties to the participants and beneficiaries, including their duties to determine the suitability of the investment funds offered by the Plan, and their duty to disclose and inform the participants and beneficiaries of the Plan of all information material to the suitability of investments under the Plan.

TAC ¶ 260.  Plaintiff alleges that

> . . . the Director Defendants, in breach of their fiduciary duties . . . knew or should have known, and failed to disclose . . . material information bearing on Dynegy stock held in the Plan including that the risks associated with Dynegy's business were materially understated by Dynegy due to the misleading statements about its revenues, earnings, operations and its impact on Dynegy's earnings, as detailed herein.

TAC ¶ 261.

Neither Dynegy nor the HRC is designated as a fiduciary in the Plan or mentioned in the fiduciary provisions of Article XV.[74] Ex. A Article XV.  The directors are mentioned in Article XV only as having "the sole authority to appoint and remove the Trustee." Ex. A § 15.2.  Nevertheless, plaintiff alleges that Dynegy is among the fiduciaries responsible to the Plan for the BPC's breaches because Dynegy acts through its board of directors.  TAC ¶ 260. Plaintiff alleges that the board of directors is among the fiduciaries responsible to the Plan for the BPC's breaches because it has the power to select members of the HRC, which has the power to appoint members of the BPC.  TAC ¶ 260.  Plaintiff alleges that the board's fiduciary duty to the Plan derives from the power given to it by § 4 of Dynegy's Bylaws as amended February 1, 2000, to appoint a compensation committee (now the HRC) to review "the salaries, compensation and employee benefits" for the employees. TAC ¶ 67.  Plaintiff alleges that the HRC's fiduciary duty to the Plan derives from the power given to it by the April 9, 2002, Proxy Statement  and the July 21, 2000, resolutions of its predecessor, the compensation committee,[75] to review all aspects of the company's benefit and welfare plans and programs, administer the plan, and

---

[74]Defendant's Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, p. 12.

[75]The Human Resources Committee was formerly the Compensation Committee or the Compensation and Human Resources Committee of the Board of Directors.  See TAC ¶ 66.

appoint a person or persons to oversee the administration and operation of the benefit plans. TAC ¶ 66.

Assuming without deciding that the powers of appointment bestowed upon Dynegy's Board of Directors and the HRC defendants by the company's bylaws and the resolutions of the board's compensation committee and/or the exercise of those powers is capable of giving rise to fiduciary duties owed to the Plan, the court nevertheless concludes that Count III as alleged against Dynegy, Dynegy's Board of Directors, and the HRC defendants fails to state a claim for which relief may be granted because plaintiff has not alleged either that those powers extended beyond the power to appoint and remove, or that, even if they did, any of these defendants exercised de facto control over the BPC defendants whose alleged breaches are necessary predicates to the derivative claims for the failure to inform and disclose asserted in Count III.

The allegations asserted in Count III do not challenge either the corporate defendants' appointment of or failure to remove specific appointees. These allegations challenge the corporate defendants' failure to disclose to their appointees "material information bearing on Dynegy stock held in the [P]lan including that the risks associated with Dynegy's business were materially understated by Dynegy due to the misleading statements about its revenues, earnings, operations and its impact on Dynegy's earnings." TAC ¶ 261. They also challenge the corporate

defendants' failure "to ensure that the [committee defendants] . . . took the appropriate action with the accurate information, including, as appropriate, informing and disclosing to the [P]lan's participants and beneficiaries the material information and/or discontinuing the [P]lan's investments in Dynegy stock."   TAC ¶ 262.

In support of their motion to dismiss Count III the corporate defendants cite <u>Bannistor</u>, 287 F.3d at 408,[76] in which the Fifth Circuit stated that "in a case such as this in which liability is directly predicated upon breach of the fiduciary duty to exercise proper control . . . the issue is whether the [defendants] . . . had de facto control over [the actor's] actions."  The court's reasoning is instructive:

> In <u>American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.</u>, 841 F.2d 658, 665 (5th Cir. 1988), we held that non-fiduciary respondeat superior liability attached under ERISA only when the principal "actively and knowingly" participated in the agent's breach.  In the instant case, we express no opinion as to whether there was a principal/agent relationship and thus do not rest BT Appellants' liability on a theory of respondeat superior liability.  However, <u>we find it instructive to apply the "actively and knowingly" requirement to BT Appellants' conduct because the ultimate issue in any non-fiduciary respondeat superior theory of liability is virtually identical to a case such as this in which liability is directly predicated upon breach of the fiduciary duty to exercise proper control over plan assets.  In the context of respondeat superior liability,</u>

---

[76]Defendants' Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, p. 44.

> the issue is whether the principal, by virtue of its de
> facto control over the agent, had control over the
> disposition of plan assets.   Here, the issue is whether
> BT Appellants, as majority shareholder of the various
> corporations, had de facto control over Ullman and
> Villano's actions.

Id. (emphasis added).  Although the issue in Bannistor was control

over plan assets, while the issue here is control over the actions

of the BPC defendants, the pivotal question to be addressed by the

court remains the same, whether Dynegy, Dynegy's Board of

Directors, or the HRC defendants had de facto control over the

BPC's actions and actively and knowingly participated in the BPC's

alleged breaches of fiduciary duties not to misrepresent, to

disclose and inform, and to eliminate Dynegy stock as a plan

investment option.

Plaintiff alleges in Count III that "[d]efendant Dynegy and

the Director Defendants neither made the appropriate disclosures

nor ensured that the [committee defendants] . . and/or the Trustee

took appropriate action."  TAC ¶ 263.  In contrast to Bannistor,

where liability was grounded on the corporate defendants' control

of their appointees, plaintiff alleges that Dynegy, Dynegy's Board

of Directors, and the HRC defendants did not control their

appointees.   Although recognizing the Fifth Circuit's functional

approach to the determination of fiduciary status, plaintiff has

not mentioned or attempted to distinguish Bannistor in her response

in opposition.  In support of her argument that Count III should

not be dismissed against Dynegy, Dynegy's Board of Directors, or the HRC defendants, plaintiff cites <u>Enron</u>, 284 F.Supp.2d at 659, as having found analogous allegations sufficient to state a claim against corporate defendants for having "failed to monitor or remove their appointees for incompetence."[77]  Although the <u>Enron</u> court did find that the plaintiffs had stated claims against corporate defendants for having

> exercised, but in specified cases not well, their explicit duty to select and appoint fiduciaries, but, despite knowledge of the threat to the plan participants' retirement assets, failed to investigate adequately, failed to provide material information or correct misleading information essential to prudent administration of the plans, failed to direct the trustee regarding prudent investment of plan assets in both the Savings Plan, including employer matching contributions, and the ESOP, and failed to monitor or remove their appointees for incompetence. . . [and had i]nstead . . . permitted, encouraged, or induced uninformed plan participants to invest in or retain Enron stock in their Savings Plan individual accounts,

<u>id.</u> at 659, the court concludes that the allegations asserted in the two cases differ in significant ways.

Unlike the plaintiff in this case, the <u>Enron</u> plaintiffs alleged that the corporate defendants either participated in the underlying breaches of their appointees, or had notice of possible breaches by their appointees that they failed to investigate.  <u>See</u> <u>id.</u> at 555 (citing <u>Newton v. Van Otterloo</u>, 756 F.Supp. 1121, 1132

---

[77]Plaintiff's Memorandum in Opposition, Docket Entry No. 69 at pp. 49-50.

(N.D. Ind. 1991)(directors have duties to monitor plan fiduciaries whom they appoint but do not breach duties absent "notice of possible misadventure by their appointees"). Unlike the plaintiff in this case, the <u>Enron</u> plaintiffs complained

> of particular employee meetings held in which certain Defendants urged plan participants to continue their employment and purchase or hold Enron stock as part of Defendants' larger scheme to enrich themselves . . . [and at these meetings plan] participants were reassured that their 401(k) funds were safely invested and that they should hold and maintain their investments in Enron stock. (Complaint at 281-282, ¶ 796)

284 F.Supp.2d at 561. These allegations led the court to analogize the employee meetings held by the <u>Enron</u> corporate defendants to those considered in <u>Varity</u>, where the Supreme Court held that corporate representatives who choose to speak to plan participants on plan-related issues do so in a fiduciary capacity and could, therefore, be held liable for fiduciary breaches. <u>Id.</u> at 561-563 (citing <u>Varity</u>, 116 S.Ct. at 1065). Unlike the plaintiff in this case, the <u>Enron</u> plaintiffs "alleged with supporting facts that disclosure was essential to protect the interests (retirement assets) of plan participants and beneficiaries from the threat of substantial depletion." <u>Id.</u> at 562. Those supporting facts consisted of a series of "red flags," including notice that a company executive had personally provided to the CEO and at least one benefits committee member "about what she saw as dangerous accounting irregularities that might result in catastrophe for the

company." <u>Id.</u> at n.64.  The red flags raised by <u>Enron</u> plaintiffs also included assertions "that had the fiduciaries cared to investigate, as was their fiduciary duty, regulatory filings would have revealed that Enron was in deep trouble." <u>Id</u>.

Because plaintiff has failed to allege (1) that Dynegy, its board of directors, or the HRC actively and knowingly participated in disseminating the 01/02 SPD or in making the Dynegy Stock Fund available as an investment option for employee-contributions, (2) that there existed any "red flags" capable of having placed the corporate defendants on notice of possible misadventure by their appointees, or (3) that had Dynegy's board of directors or HRC investigated Dynegy's regulatory filings they would have discovered the accounting improprieties and/or financial problems on which plaintiff grounds this case, the court concludes that plaintiff's allegations are distinguishable from those at issue in <u>Enron</u>. Because plaintiff has failed to allege that Dynegy, its board or directors, or the HRC exercised de facto control over the BPC or that they had received any notice of possible misadventure either by their appointees or by the BPC that a reasonable investigation would have revealed, the court concludes that Count III fails to state a claim for which relief may be granted.[78]

---

[78]While plaintiff does allege that Dynegy made statements when trying to recruit and retain employees that they would be "well rewarded for their efforts," TAC ¶ 78, and when hosting events such
(continued...)

(ii)   **Count VI**

In Count VI plaintiff alleges that Dynegy, its board of directors, and the HRC breached their duty to monitor the committee defendants.  TAC ¶¶ 279-283.  Plaintiff specifically alleges that these defendants breached the fiduciary duties of loyalty and prudence imposed by 29 U.S.C. § 1104(a)(1)(A)-(B) "by failing to replace the members of the . . . [BPC and/or the RBPC] with persons who would act to protect the participants and beneficiaries of the Plan from making inappropriate investments in Dynegy stock."  TAC ¶ 283.  Plaintiff also alleges that these defendants had a duty to monitor the conduct of the committee defendants "to ensure that they were performing their duties consistently with the requirements of ERISA."  TAC ¶ 282.

Because the allegations asserted in Count VI challenge the corporate defendants' failure to monitor and replace members of the BPC with persons who would act to protect the participants and beneficiaries of the Plan from making inappropriate investments in Dynegy stock, they at least implicate the fiduciary power to appoint and remove.  Nevertheless, the court is not persuaded that

---

[78](...continued)
as "town meetings . . . highlight[ing] the Company's performance and outlook for employee attendees," TAC ¶ 79, plaintiff does not allege that these statements were made in the context of other statements about the Plan specifically or benefits generally.  See also Plaintiff's Memorandum in Opposition, Docket Entry No. 69, p. 50, where plaintiff acknowledges that these corporate defendants were "not directly responsible for the investment of Plan assets in employer stock."

these allegations are sufficient to state a claim against any of the corporate defendants because, like the allegations asserted in Count III, the allegations asserted in Count VI do not allege that the corporate defendants failed to remove any specific appointees for incompetence, breach of fiduciary duty, or any other wrongdoing.  Nor do they allege that the corporate defendants had notice that any specific appointees were incompetent or otherwise subject to replacement for cause.  See Enron, 284 F.Supp.2d at 555 (citing Newton, 756 F.Supp. at 1132 (directors have duties to monitor plan fiduciaries whom they appoint but do not breach duties absent "notice of possible misadventure by their appointees")).

Assuming without deciding that by exercising the powers of appointment granted to them by Dynegy's Bylaws and by resolutions of its compensation committee the corporate defendants were subject to fiduciary duties, the court nevertheless concludes that plaintiff has failed to state a claim against them for breach of the fiduciary duty to monitor because she has failed to allege either that their exercise of fiduciary power extended beyond the power to appoint and remove, or that any of them were on notice of possible misadventure by any of their appointees.

## D.   Claims for Co-Fiduciary Liability Against Dynegy and Trustees

Plaintiff alleges that (1) Dynegy breached its duty to co-fiduciaries (Count VIII), (2) CG Trust breached its duty to co-fiduciaries (Count IX), and (3) Vanguard breached its duty to co-fiduciaries (Count X).

1. <u>Dynegy</u>

In Count VIII plaintiff alleges that Dynegy breached its duty to co-fiduciaries.  99-100 TAC ¶¶ 288-290.  Plaintiff specifically alleges that Dynegy breached the fiduciary duty imposed on co-fiduciaries by 29 U.S.C. § 1105

> [b]ecause Defendant Dynegy had knowledge at all relevant times of the factual matters set forth in this Complaint, and was responsible for withholding material information from the market and providing the market with misleading disclosures, by the conduct set forth above Defendant Dynegy knowingly participated in the breaches of its co-fiduciaries (including the Benefit Plans Committee Defendants . . . and the Director Defendants), failed to fulfill its own fiduciary responsibilities as set forth in ERISA § 404 so as to enable the breaches of its co-fiduciaries, and failed to take reasonable steps to correct the breaches of its co-fiduciaries of which it had knowledge such that it has liability for the breaches of each of its co-fiduciaries . . .

99-100 TAC ¶ 290.

Citing 29 U.S.C. § 1105(a) and <u>Sommers II</u>, 883 F.2d at 352, Dynegy argues that it cannot be held liable as a co-fiduciary because it is not a named fiduciary in the Plan, it does not have any discretionary authority allocated to it by the Plan, and plaintiff's allegations do not indicate that it functioned as a plan fiduciary.[79]  Dynegy argues that even if it were a fiduciary that plaintiff has failed to plead facts sufficient to support a co-fiduciary claim because all plaintiff alleges is that Dynegy "was responsible for withholding material information from the

---

[79]Defendants' Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, p. 53.

n:\files\m&o\02-3076 motns to dism          -88-

market and providing the market with misleading disclosures (TAC 290)."[80]  Citing <u>Donovan</u>, 716 F.2d at 1475, Dynegy argues that this claim should be dismissed because plaintiff fails to allege that Dynegy had actual knowledge that it was participating in the breaches of other fiduciaries.[81]

   (a)  Dynegy's Fiduciary Status

   Plaintiff alleges that Dynegy is a plan fiduciary because its board of directors selects from among themselves members of the HRC which, in turn, appoints the members of the BPC.  Because a corporation acts through its directors, and plaintiff alleges that Dynegy's Directors select from among themselves the HRC which, in turn, appoints the members of the BPC, the plan administrator and named fiduciary, the court assumes without deciding that these allegations are sufficient to allege Dynegy's status as a plan fiduciary.  See <u>Izzarelli v. Rexene Prods. Co.</u>, 24 F.3d 1506, 1524 (5th Cir. 1994)(an employer/plan sponsor is a fiduciary "only when and to the extent that it functions in its capacity as plan administrator, not when it conducts business that is not regulated by ERISA."[82]  See also <u>Sommers II</u>, 883 F.2d at 352 (Because a person is a fiduciary only to the extent that he exercises authority or control over the management of a plan or plan assets, in the

---

[80]<u>Id</u>.

[81]<u>Id.</u> at n.75.

[82]<u>Id.</u> at p. 42.

absence of such authority and control a person cannot be liable as a co-fiduciary.).

     (b)  Co-Fiduciary Liability

     In addition to any liability that a fiduciary may have under any other provision of ERISA, 29 U.S.C. § 1105(a) provides that

> a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or undertakes knowingly to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

Although plaintiff argues that her allegations state claims against Dynegy pursuant to each of these three provisions, the court has already concluded that plaintiff has not alleged that Dynegy exerted de facto control over the BPC, or that Dynegy breached fiduciary duties stemming from the power of its board to select members of the HRC, and/or from the HRC's appointment of the BPC. These conclusions preclude the court from finding that plaintiff has stated claims under § 1105(a)(1) for knowingly participating in a breach of another fiduciary, or under § 1105(a)(2) for breaching it own duties to the Plan and, thereby, enabling another fiduciary

to breach its duties to the Plan.  The court concludes, however, that plaintiff has stated a claim against Dynegy for violation of § 1105(a)(3) for knowing about, but failing to take reasonable steps to remedy, the breach of another fiduciary.

Dynegy argues that plaintiff has failed to state a co-fiduciary claim because her allegations fail to explain how Dynegy would have had actual knowledge of the BPC defendant's breaches.[83] Because a corporation acts solely through agents, acts of individuals in performing ERISA fiduciary functions while acting in their corporate role are attributable to the corporation. See Cosgrove v. Circle K Corp., 884 F.Supp. 350, 352-353 (D. Ariz. 1995).  Because the BPC defendants include Dorey, Doty, Lang, and Mott, who were officers of the company,[84] the court concludes that Dynegy itself had knowledge of the BPC's alleged breaches.  Because plaintiff has alleged that Dynegy officers had knowledge of the BPC's alleged breaches but failed to take remedial action, the court concludes that plaintiff has stated a claim against Dynegy for co-fiduciary liability. See Silverman v. Mutual Ben. Life Ins. Co., 941 F.Supp. 1327, 1337 (E.D.N.Y. 1996), aff'd, 138 F.3d 98 (2d

---

[83]Id. at p. 53.

[84]Plaintiff alleges that Dorey was also Chief Financial Officer from June to December of 2002, that Doty was Executive Vice-President and Chief Financial Officer from 1999 to June of 2002, that Lang was also Vice-President of Human Resources since 2000, and that Mott was Senior Vice-President and Chief Accounting Officer and Controller from March of 2000 to January of 2003.  TAC ¶¶ 35, 36, 40, and 43.

Cir.), cert. denied, 119 S.Ct. 178 (1998)(the elements of a cause of action under 29 U.S.C. § 1105(a)(3) are that the fiduciary had knowledge of the co-fiduciary's breach and that the losses "resulted from" the co-fiduciary defendant's failure to take reasonable steps to remedy the breach).

2.   Trustees

In Counts IX and X plaintiff alleges that CG Trust and Vanguard are liable as co-fiduciaries for the committee defendants' breaches of their fiduciary duty to comply with documents and instruments governing the Plan by failing to direct the diversification of employer matching contributions out of employer stock and into diversified investments.  TAC ¶¶ 291-295 (CG Trust), ¶¶ 296-300 (Vanguard).[85]  Because the court has concluded that these allegations against the committee defendants fail to state a claim for which relief may be granted, the court concludes that plaintiff has also failed to state claims against CG Trust and Vanguard for co-fiduciary liability.

**E.   Claim for Equitable Relief Against Dynegy**

In Count XI plaintiff alleges that

[t]o the extent that Defendant Dynegy is found not to have been [a] fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA, [that] Defendant Dynegy knowingly participated in the breaches of those Defendants who were

---

[85]See also Plaintiff's Memorandum in Opposition to the Trustee Defendants' Motions to Dismiss, Docket Entry No. 68, p. 20.

fiduciaries and acted in a fiduciary capacity and as such is liable for equitable relief.

TAC ¶ 302.  Plaintiff also alleges that Dynegy benefitted from the breaches by discharging its obligations to the Plan in shares of Dynegy stock while the value of the stock was inflated as a result of the materially misleading statements and omissions Dynegy made to the market, and that Dynegy may be required to disgorge this benefit or that a constructive trust should be imposed on treasury shares of Dynegy that would have been contributed to the Plan but for Dynegy's participation in the other defendants' breaches.  TAC ¶ 303.

Dynegy argues that Count XI should be dismissed because plaintiff fails to allege specific facts indicating that Dynegy knowingly participated in or had actual knowledge of any alleged breaches of fiduciary duty.  Like Count VIII, Count XI is simply an attempt to hold Dynegy vicariously liable for the purported breaches of others.[86]  Because the court has already concluded that plaintiff's allegations that the BPC included Dynegy officers Dorey, Doty, Lang, and Mott, and that by virtue of their presence on the BPC plaintiff has alleged that Dynegy had actual knowledge of the BPC's alleged breaches, the court concludes that plaintiff's allegations are sufficient to state a claim for equitable relief against Dynegy.  Although Dynegy also argues that this claim should

---

[86]Defendants' Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, p. 54.

be dismissed because plaintiff's claim is for damages as opposed to equitable relief,[87] the issue of which, if any, equitable remedy would be appropriate must await development of the facts.[88]

## VI.  Conclusions and Order

For the reasons set forth above, Robert D. Doty's Motion to Dismiss (Docket Entry No. 35) is **GRANTED in part and DENIED in part**; Charles L. Watson's Motion to Dismiss (Docket Entry No. 36) is **GRANTED**; the Motion to Dismiss on Behalf of Dynegy Inc. and Certain Members of its Board of Directors, Benefit Plans and Retirement/Benefit Plans Committees (Docket Entry No. 37) is **GRANTED in part and DENIED in part**; the Motion to Dismiss on Behalf of Director Defendants Lipton, Mustoe, Poole, Robertson, Rubenfield, and Woertz and Retirement/Benefit Plans Committee Defendant Barton (Docket Entry No. 41) is **GRANTED**; the Motion to Dismiss Third Amended Complaint on Behalf of Defendants Stephen J. Brandon and Paul N. Woollacott for Lack of Personal Jurisdiction (Docket Entry No. 43) is **GRANTED**, and the Rule 12(b)(6) Motion urged on behalf of Brandon and Woollacott (Docket Entry No. 54) is **DENIED** as moot; Defendant Vanguard Fiduciary Trust Company's Motion to Dismiss Count X of Plaintiff's Third Amended Complaint (Docket Entry No. 52) is **GRANTED**; Defendant CG Trusts' Motion to Dismiss

---

[87]Defendants' Reply, Docket Entry No. 74, pp. 35-37.

[88]Defendants' Memorandum in Support of Motion to Dismiss, Docket Entry No. 38, p. 55.

Count IX of Plaintiff's Third Amended Complaint (Docket Entry No. 61) is **GRANTED**.

Pursuant to these rulings the following claims are **DISMISSED**: all claims against the Trustees, CG Trust Company and Vanguard Fiduciary, are **DISMISSED with prejudice**; all claims against members of Dynegy's Retirement/Benefit Plans Committee, Dynegy's Human Resources Committee, and Dynegy's Board of Directors are **DISMISSED with prejudice**, the claims asserted against defendants Stephen J. Brandon and Paul N. Woollacott are **DISMISSED without prejudice**, and the claims asserted against the following defendants are **DISMISSED with prejudice**:   J. Joe Adjoran, Michael B. Barton, Charles E. Bayless, Stephen Bergstrom, Darald W. Callahan, Michael D. Capella, Daniel L. Dienstbier, Patricia M. Eckert, John Ford, Jerry L. Johnson, Tom Linton, Jeffrey M. Lipton, C. Steven McMillan, Lisa Q. Metts, Jack D. Mustoe, A. Terence Poole, Robert M. Powers, H. John Riley, Peter J. Robertson, Sheli Z. Rosenberg, Stanley I. Rubenfield, Joe J. Stewart, Glenn F. Tilton, Charles Watson, John Watson, J. Otis Winters, and Patricia A. Woertz.

The claims remaining in the case are:   (1) claims asserted against members of Dynegy's Benefit Plans Committee for breach of the fiduciary duty not to misrepresent based on distribution of the January 2002 Summary Plan Description (Count I), breach of the fiduciary duty to disclose material information regarding the risks and appropriateness of investing in Dynegy stock needed to correct misrepresentations contained in the January 2002 Summary Plan

Description (Count II), and breach of the fiduciary duty not to offer inappropriate investment options to plan participants based on inclusion of the Dynegy Stock Fund in the menu of investment options available for employee contributions beginning on January 1, 2002 (Count IV); and (2) claims asserted against Dynegy for breach of co-fiduciary liability based on the Benefit Plans Committee's breaches (Count VIII) and for equitable relief (Count XI).  Because plaintiff alleges that Marian M. Davenport served on the Benefit Plans Committee in 2000 and 2001, but not in 2002, all the claims asserted against her are **DISMISSED with prejudice.**  The defendants remaining in this lawsuit are Dynegy, Inc. and Benefit Plans Committee members Larry Altenbaumer, Robert D. Doty, Louis J. Dorey, Alec G. Dreyer, Andrea Lang, Michael Mott, Milton L. Scott, and R. Black Young.[89]

**SIGNED** at Houston, Texas, on this 5th day of March, 2004.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[89]The court has allowed the parties extraordinary leeway in submitting lengthy briefs and other written materials in connection with the pending motions.  As the length of this Memorandum and Order indicates, the court has expended considerable time reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments.  While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion.  Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.