United States Courts
Southern District of Texas
FILED

DEC 0 7 2004

Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re DYNEGY, INC. ERISA LITIGATION | ) ) ) ) ) Civil Action No. H-02-3076 |
| | ) CLASS ACTION |
| This Document Relates To: | ) ) PLAINTIFFS' MOTION AND |
| | ) MEMORANDUM IN SUPPORT OF |
| All Actions | ) ENTRY OF ORDER AND FINAL |
| | ) JUDGMENT |

## RELIEF REQUESTED

Plaintiff Constance K. Schied, by and through undersigned Class Counsel, respectfully moves the Court for entry of an order and final judgment, finally approving the Class Action Settlement Agreement, dated October 27, 2004 (the "Settlement Agreement"). A proposed Order and Final Judgment is submitted herewith.

The Settlement – in the amount of $30.75 million – provides substantial benefits to the Plan and the entire Class, and removes the delay, risk of non-recovery and expense inherent in a complex ERISA case such as this. For the reasons explained herein, Plaintiff requests that the Court grant her motion.

## OVERVIEW

This is an excellent settlement for the participants in the Dynegy Inc. 401(k) Savings Plan (the "Plan").[1] This settlement was obtained in a cutting-edge area of the law, one that has yet to yield any significant appellate cases and therefore posed enormous risks for the participants (and

---

[1] The capitalized terms used in this memorandum and the papers being filed this date are defined in the Settlement Agreement.

1

their counsel).[2] We are very pleased to present this settlement to this Court for review and recommend it for approval.

## FACTUAL BACKGROUND

The Court is familiar with the case as a result of the extensive briefing on the motions to dismiss, which yielded the Court's opinion in *In re Dynegy, Inc. ERISA Litigation*, 309 F. Supp. 2d 861, 907 (S.D. Tex. 2004). While Plaintiff prevailed on several significant grounds, the Court rejected a substantial portion of the claims presented in the Complaint.[3]

Meanwhile, Co-Lead Counsel diligently and vigorously prepared their case, including by completing a significant amount of discovery, summarized as follows:

- Counsel served document requests on the Defendants, seeking dozens of categories of information;

- Counsel served subpoenas on third party witnesses, including Dynegy's auditors (PricewaterhouseCoopers LLP), Dynegy's former auditors (Arthur Anderson), the Plan's auditor (McConnell Jones Lanier & Murphy LLP), the Plan's trustee (CG Trust Company), and the Plan's former trustee (Vanguard Fiduciary Trust Company);

---

[2] At the time this case was filed in 2002, there were only two cases (one of which was unpublished) on the legal issues raised by holding company stock in 401(k) plans, and one of these dismissed the plaintiffs' claims out of hand. *In re IKON Office Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481 (E.D. Pa. 2000) (motion to dismiss denied), 191 F.R.D. 457 (E.D. Pa. 2000) (class certification granted); *Hull v. Policy Mgmt. Sys. Corp.*, No. 00-778-17, 2001 WL 1836286 (D.S.C. Feb. 9, 2001) (motion to dismiss granted).

[3] Briefly, the court let stand Count I and a portion of Count II, involving misrepresentations contained in the Summary Plan Description and failures to disclose material information about Dynegy, but sharply limited the scope of Count II. The Court also dismissed a portion of Count IV, holding that the Defendants' failure to eliminate the plan's investment in Dynegy stock attributable to employer contributions was not actionable. As it happens, less than $10 million in employee contributions were invested by the plan in Dynegy stock during the proposed class period.

It is Plaintiff's view that the Court's opinion would nevertheless allow the proposed Class to recover for losses suffered by the Plan at least after January 16, 2002 from the holding and contribution of inflated Dynegy stock traceable to employer contributions due to the misrepresentation and the failures to disclose enunciated in Counts I and II. Defendants do not share this reading of the Court's opinion, and would argue that under the Court's opinion Plaintiff's claims are limited to purchases of Dynegy stock with employee contributions. These issues are addressed in more detail in the Motion and Memorandum in Support of Plaintiff's Motion for an Order Preliminarily Approving Settlement, Certifying the Class, and Setting a Date and Time for the Fairness Hearing (the "Preliminary Approval Motion") at pp. 9-14.

2

- Counsel obtained and reviewed more than 275,000 pages of documents related to the allegations of the Complaint;

- Counsel obtained and reviewed digital media from several sources, including numerous CDs containing information and communications from Vanguard Fiduciary Trust Company and videotapes of Company meetings;

- Counsel served a set of interrogatories to Defendants, posing a number of discrete questions related to this litigation; and

- Counsel had retained damages experts, and were prepared to disclose (had the case not settled when it did) additional experts in support of Plaintiff's liability and economic loss allegations.

Memorandum in Support of Class Counsel's Joint Petition for an Award of Attorneys; Fees, Reimbursement of Expenses, and an Incentive Award to the Named Plaintiff ("Fee Petition") at 4; Declaration of Lynn Lincoln Sarko on Behalf of Keller Rohrback L.L.P. in Support of Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Sarko Fee Declaration") ¶ 20; Declaration of Marc I. Machiz on Behalf of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. in Support of Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Machiz Fee Declaration" ¶ 14.

The parties agreed in principle to settle this case only after this discovery was completed, when both sides were in an excellent position to evaluate the strengths and weaknesses of each side's case. The issues in the present case are extremely well-developed. Plaintiff's counsel have carefully researched the relevant law, have a full understanding of the legal and factual issues surrounding this case, and are in an ideal position to evaluate the merits of their case. Having completed a thorough investigation in order to properly evaluate the case, Plaintiff's Counsel strongly recommend the proposed Settlement as fair, adequate and in the best interests of the Class. Declaration of Lynn Lincoln Sarko in Support of Plaintiff's Motion for Entry of Order and Final Judgment ("Sarko Final Approval Declaration") ¶ 18; Sarko Fee Declaration ¶ 21-22; Machiz Fee Declaration ¶ 15-16.

## THE SETTLEMENT

### A. The Settlement Negotiations

Although informal settlement discussions had occurred prior to the Court's March 5, 2004 ruling on motions to dismiss, that opinion, which would likely have severely limited any recovery that could be obtained absent a successful appeal, provided a fresh impetus for settlement negotiations.

In May of 2004, the parties obtained the services of the Honorable Finis E. Cowan, Jr., a former federal judge and experienced mediator, and conducted negotiations, including three full days of face-to-face discussions in Houston with the mediator and numerous telephone contacts spread over the course of late spring, summer, and fall of 2004.

The settlement negotiations were long, protracted, and hard fought. While an agreement in principle on a settlement amount was reached in late-August 2004, spirited negotiations on the precise terms of the settlement continued until late-October 2004. Throughout, settlement discussions were conducted with vigor by both sides, and frequently threatened to end without a deal. Settlement discussions occurred while class certification proceedings were held in abeyance, but merits discovery continued, including the briefing of a motion to compel filed by Plaintiff, and continued meet and confer discussions and correspondence aimed at resolving remaining disputes over the discoverability of documents.

Ultimately the parties were able to reach agreement in the amount of $30,750,000. The settlement was the result of months of contentious arms-length negotiations among the parties, their insurers, their highly experienced counsel, and Judge Cowan. *See* Declaration of Finis E. Cowan, Jr., filed herewith; Sarko Fee Declaration ¶¶ 16-19; Machiz Fee Declaration ¶¶ 10-13. The settlement process could hardly have been more thorough, adversarial, or professional.

### B. The Settlement Terms

The parties finally reduced their agreement to writing in the Settlement Agreement dated October 27, 2004.[4] Under the Settlement Agreement, Defendants have paid into the Settlement Fund $30,750,000. This amount, less the amount the withheld for administration, and Court-ordered expenses, attorneys' fees, and named plaintiff compensation, will be paid to the Plan and allocated to the Plan accounts of the participants and former participants according to their losses as a result of the Plan holding or purchasing interests in the Dynegy Stock Fund.[5]

### C. The Plan of Allocation

Under ERISA, a case such as this is a claim for "plan-wide" relief, and the proceeds are paid into the Plan as an entity. ERISA § 409, 11 U.S.C. § 1109. Ultimately, however, the Plan's receipts must be allocated among the various participants of the Plan, and the Settlement Agreement (§ 2.4.4) calls for the Court, as part of the settlement approval process, to also approve the Plan of Allocation. Sarko Final Approval Declaration ¶ 7. Plaintiff's Motion and [Proposed] Order Approving Plan of Allocation is filed herewith.

There are significant differences between a plan of allocation in a typical class action and an ERISA case like this. In a typical securities, antitrust, or consumer case, the class members file proofs of claim, the claims are then reviewed, a decision is made on the validity of the claims, and approved claims are finally paid through a claims administrator. This claims process is unnecessary here. *Id.* at ¶ 6. All the data necessary to the allocation is available from the Plan itself. Many class members still have existing 401(k) accounts in which the funds can be directly deposited. Others had accounts that can now be activated for the purposes of the allocation, or the funds can be disbursed as a 401(k) distribution, eligible for roll-over, to the participant's last known address. *Id.* at ¶ 10-11. In any event, no claims submission and approval process is necessary.

---

[4] The Settlement Agreement is attached as Exhibit 1 to the Preliminary Approval Motion.
[5] Because the payments are made into the Plan, not paid out to individuals, the tax-privileged nature of these funds is preserved.

The Plan of Allocation, therefore, is simply an allocation to the participants' accounts in proportion to their alleged individual losses, with minor adjustments to reflect the relative strength of claims throughout the Class Period. The Plan of Allocation has been described in the Class Notice, and its mechanics are also spelled out in the Motion and [Proposed] Order Approving Plan of Allocation. The basic concept is that the settlement proceeds will be shared based on the relative proportions of the participants' alleged losses due to the decline in value of Dynegy stock. Under this structure, as explained in the Class Notice (at § 8), each participant's share would be calculated as follows:

- Using the *Plan's* records and other records as necessary, the *Plan* trustee shall identify each member of the *Settlement Class*.

- An "*Adjusted Net Loss*" shall be calculated for each member of the *Settlement Class*. *Adjusted Net Loss* shall be a positive number equal to (a) the sum of:

    i. the participant's Dynegy Stock Fund *Plan* account balance at the beginning of the class period;

    ii. plus the dollar amount added (through employee contributions, employer contributions in cash or stock or cash dividends) to a participant's Dynegy Stock Fund *Plan* account from the start of the Class Period through August 15, 2001;

    iii. plus 1.15 times the dollar amount added to a participant's Dynegy Stock Fund *Plan* account from August 16, 2001 through January 15, 2002;

    iv. plus 1.3 times the dollar amount added to a participant's Dynegy Stock Fund *Plan* account from January 16, 2002 through April 25, 2002;

    v. plus the dollar amount added to a participant's Dynegy Stock Fund *Plan* account from April 26, 2002 until the end of the class period;

    (b) *minus* the sum of:

    i. the dollar amount of a participant's Dynegy Stock Fund *Plan* account balance at the end of the Class Period;

6

      ii. plus the dollar amount of all distributions and transfers from a participant's Dynegy Stock Fund *Plan* account during the Class Period.

- The *Adjusted Net Losses* of the *Settlement Class* members shall be aggregated.

- Each *Settlement Class* member will be assigned an *Adjusted Net Loss Percentage*, which shall be his, her or its *Adjusted Net Loss* as a percentage of the aggregated *Adjusted Net Losses* of the entire *Settlement Class*.

- The *Plan* trustee shall allocate to each *Settlement Class* member a share of the *Net Proceeds* (less the *Plan* expenses reasonably and necessarily incurred in implementing the *Plan of Allocation*), multiplied by the *Settlement Class* member's *Adjusted Net Loss Percentage* ("*Class Member Share*").

      The final Plan of Allocation for which Plaintiff seeks approval is fully consistent with the Plan of Allocation as it appeared in the notice, set forth above. It is slightly more detailed in order to address technical issues raised by the Plan's recordkeepers in reviewing the Plan of Allocation set forth in the notice. In particular, the final Plan of Allocation is drafted to clarify that individuals will not receive an allocation attributable to losses on the unvested balances in their accounts, if they have left Dynegy's employ without fully vesting prior to the end of this calendar year. Such individuals, whose employment with Dynegy is at an end, would have no expectation of being compensated for losses to that portion of their account balances that would be forfeited under the Plan's vesting rules for such participants. The final Plan of Allocation also clarifies that those who remain in the employ of Dynegy at the end of this calendar year, even though they may not as yet be fully vested in their account balances, will receive an allocation based on their entire account balance and this allocation will be treated as fully vested. Though arguably these individuals would expect, under the Plan's rules, to forfeit any recovery attributable to the portion of their account that remained unvested at some time in the future if they left Dynegy's employ without fully vesting, the final Plan of Allocation treats these current employees as if they will ultimately fully vest. This provision of the final Plan of Allocation simplifies administration of the settlement, and avoids the problem of some of the recovery

leaking from the class of those injured to the plan participant population at large as the result of forfeitures of amounts recovered in the settlement following the plans terms. Under the Plan of Allocation, all of the recovery net of fees, expenses and the award to the class representative will be allocated to injured class members and will remain allocated to injured class members under the final Plan of Allocation.

The Final Plan of Allocation also makes provision for eliminating *de minimus* payments of $50 or less to former Plan participants if the Plan Trustee, in consultation with the Plan's named fiduciaries, determines that it is unduly expensive to administer such payments. Because of concerns raised by the Plan's Trustee, there is also a provision allowing for necessary changes in the Plan of Allocation to deal with problems complying with the literal terms of the allocation plan that may be caused by lacunae in the Plan's historical data. Such changes may only occur with Class Counsel's participation and consent and must preserve the basic intent of the Plan of Allocation. With respect to the Settlement distribution, the Plan Trustee is permitted to follow its normal procedures for dealing with situations where a participant or beneficiary cannot be found or fails to deposit a distribution.

This is the basic approach that has been used in settlements of other 401(k) company stock cases, and it has been approved by judges in other districts. *In re Household Int'l., Inc. ERISA Litig.*, No. 02-8921 (N.D. Ill. Nov. 22, 2004); *In re Global Crossing ERISA Litig.*, No. 02-7453, slip op. at 7 (S.D.N.Y. Nov. 10, 2004); *Reinhart v. Lucent Techs., Inc.*, No. 01-3491 (D.N.J. March, 15, 2004); *In re Providian Fin. Corp. ERISA Lit.*, No. 02-1001, 2003 WL 22005019 (N.D. Cal. June 30, 2003). It has worked well in those cases, and we believe it will well serve the class members here as well. *See* Sarko Final Approval Declaration ¶ 9.

## ARGUMENT IN SUPPORT OF SETTLEMENT

The district court may approve a class action settlement if the class satisfies the requirements of Rule 23, notice has been given "in a reasonable manner," and the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *see also Cotton v. Hinton*, 559 F.2d

1326, 1330 (5th Cir. 1977) (the Fifth Circuit standard for reviewing a proposed class action settlement includes whether the proposed settlement is "fair, adequate and reasonable"). We address these three requirements in turn.

### D. The ERISA Class Should Be Certified.

The Court has previously preliminarily certified the Settlement Class, and Plaintiff now seeks final certification of the Settlement Class under Fed. R. Civ. P. 23(b)(1) and/or (b)(2). The Settlement Class is defined as:

> (a) All *Persons* who were participants in the *Plan* at any time from April 27, 1999 through January 30, 2003, inclusive; and (b) as to each *Person* within the scope of subsection (a), his, her or its beneficiaries, alternate payees, *Representatives* and *Successors-In-Interest*. Excluded from the *Settlement Class* are the *Defendants* and the *Dismissed Defendants*, and the *Immediate Family* and *Successors-In-Interest* of any *Defendant or Dismissed Defendant*, except for *Immediate Family* members who themselves are not *Defendants or Dismissed Defendants* and who were participants in the *Plan* at any time from April 27, 1999 through January 30, 2003, inclusive.

The Court may certify the Settlement Class upon finding the action satisfies the four prerequisites of Rule 23(a) and one or more of the three subdivisions of Rule 23(b). *See generally Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-29 (1997); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 308 (3rd Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) (certifying class for settlement purposes in ERISA class action); *Tittle v. Enron Corp.*, No. 01-3913 (S.D. Tex. June 3, 2004) (preliminarily approving settlement and conditionally certifying class for settlement purposes). The requirements for certification are easily met in a 401(k) company stock case. We direct the Court's attention especially to *In re WorldCom, Inc. ERISA Litigation*, No. 02-4816, 2004 WL 2211664 (S.D.N.Y. Oct. 4, 2004); *In re Qwest ERISA Litigation*, No. 02- 464 (D. Colo. Sept. 27, 2004); *Furstenau v. AT&T Corp.*, No. 02-5409 (D.N.J. Sept. 2, 2004); *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) ("*Kmart*"); *Nelson v. IPALCO Enterprises, Inc.*, No. 02-477, 2003 WL 23101792 (S.D. Ind. Sept. 30, 2003); and *In re IKON Office Solutions, Inc. Securities Litigation*, 191 F.R.D. 457 (E.D. Pa. 2000), which

certified 401(k) company stock classes in an adversarial setting, and *In re Houshold International, Inc. ERISA Litigation*, No. 02-8921 (N.D. Ill. Nov. 22, 2004); *In re Global Crossing ERISA Litigation,* No. 02-7453, slip op. at 7-8 (S.D.N.Y. Nov. 10, 2004); *Reinhart v. Lucent Technologies, Inc.*, No. 01-3491 (D.N.J. March 15, 2004); *Providian ERISA Litig.*, 2003 WL 22005019; and *Kolar v. Rite Aid Corp.*, No. 01-1229, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003), which did so in the context of settlement.

Having addressed these issues in the Preliminary Approval Motion, they are addressed here only briefly, beginning with the four requirements of Rule 23(a), followed by the requirements of Rule 23(b).

*Numerosity* – Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Here, the class is comprised of approximately 5,400 members. *See* Declaration of Maria Bjazevich attesting to mailing of Class Notice, filed herewith. While there are no per se rules for establishing numerosity, *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1022 (5th Cir. 1992), where a class is plainly numerous (hundreds or thousands of members), joinder is impracticable and Rule 23(a)(1) is satisfied. *See, e.g., Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 569 (S.D. Tex. 2000). Clearly joinder of all class members here would be impracticable and Rule 23(a)(1) is satisfied.

*Commonality* – Fed. R. Civ. P. 23(a)(2) is satisfied where there are "questions of law or fact common to the class." It does not require that all questions of law or fact be common – a single significant common issue is enough. *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997); *Forbush v. J.C. Penny Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993); *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993); *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001), *cert. denied*, 534 U.S. 1113 (2002). Here, Plaintiff's allegations that the Defendants breached the fiduciary duties they owed to members of the proposed class by imprudently offering and maintaining the Dynegy stock fund as an investment option under the

Plan, and by, *inter alia*, imprudently allowing and/or directing the Plan to purchase and hold Dynegy stock, satisfy Rule 23(a)(2). *AT&T*, No. 02-5409, slip op. at 5-6 (in ERISA breach of fiduciary duty case, commonality requirement met when plaintiff can show "one common question of law or fact with the proposed class . . . individual reliance does not defeat commonality"); *Kmart*, 220 F.R.D. at 518 (common questions include, among others, whether Defendants were fiduciaries of the plan and whether defendants breached their fiduciary duties; "claim for breach of the duty of prudence, clearly presents a common issue"); *Rite Aid*, 2003 WL 1257272, at *2 (in ERISA breach of fiduciary case alleging imprudent investment of plan assets in company stock, the existence of common issues was "obvious"); *Amara v. CIGNA Corp.*, No. 01-2361, 2002 WL 31993224, at *3 (D. Conn. 2002) (ERISA cases turn on core questions of law); *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries.") (*citing Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993)).

Under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), any participant in or beneficiary of a plan may sue for breach of fiduciary duties "in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). *See also Kling v. Fidelity Mgmt. Trust Co.*, 270 F. Supp. 2d 121 (D. Mass. 2003) (claim to recover for wrongfully offering employer stock as an investment in a 401(k) plan is properly brought under 502(a)(2)). *See also Kmart*, 220 F.R.D. 517; *Lucent*, slip op. at 9-10; *Nelson*, 2003 WL 23101792 at *3; *Providian*, 2003 WL 22005019, at *2; *Rite Aid*, 2003 WL 1257272 at *3; *Ikon*, 191 F.R.D. at 463. Here essentially all the issues are common: fiduciary status, fiduciary breach, and the measure of the Plan's losses. As the Court stated in *Ikon*, 191 F.R.D. at 465, "the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs." This requirement too is plainly met.

*Typicality* – Rule 23(a)(3) requires that proposed class representatives present claims typical of other class members – in other words, class representatives should have the same interests and seek a remedy for the same injuries as other class members. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). Here, the claims of the proposed class representatives are based on the same legal theory and same course of conduct as the claims of other class members seeking relief under ERISA § 502(a)(2). *See Kmart*, 220 F.R.D. at 518; *Lucent*, slip op. at 10; *Nelson*, 2003 WL 23101792 at *4; *Providian*, 2003 WL 22005019 at *2; *Rite Aid*, 2003 WL 1257272 at *2; *Ikon*, 191 F.R.D. at 465-66.

*Adequacy* – Rule 23(a)(4) requires that the proposed class representatives fairly and adequately protect the interests of the class they wish to represent. There are two prongs to this requirement: (i) the class representatives must have common interests with the class members; and (ii) the class representatives must vigorously prosecute the interests of the class through qualified counsel. *Sosna v. Iowa*, 419 U.S. 393, 417 (1975). The Named Plaintiff easily meets this test. She has vigorously prosecuted this case, and her counsel is very experienced in 401(k) company stock litigation. *See Kmart*, 220 F.R.D. at 520-521; *Lucent*, slip op. at 10-11; *Nelson*, 2003 WL 23101792 at *8; *Providian*, 2003 WL 22005019 at *2; *Rite Aid*, 2003 WL 1257272 at *2; *Ikon*, 191 F.R.D. at 466; *See also* Fee Petition at 30-31.

*Rule 23(b)(1)* – Under Rule 23(b)(1), a class may be certified if:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

    (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

    (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . .

Fed. R. Civ. P. 23(b)(1).

Thus, Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *Ikon*, 191 F.R.D. at 466. Because of ERISA's distinctive "representative capacity" and remedial provisions, "ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *Rite Aid*, 2003 WL 1257272 at *3. *Accord, Kmart*, 220 F.R.D. at 521-23; *Providian*, 2003 WL 22005019 at *2; *Ikon*, 191 F.R.D. at 466.

*Rule 23(b)(2)* – In addition to the bases for class certification provided by Rule 23(b), a class may be certified if:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

Fed. R. Civ. P. 23(b)(2).

Here, Plaintiff's claims are all based on conduct by Defendants that is generally applicable on a class-wide basis. Plaintiff alleges that Defendants breached their fiduciary duties to the participants by (among other things): (i) failing to ensure that Company stock was a prudent investment for the Plan; (ii) misrepresenting material information concerning the value of Company stock and the prudence of investing Plan assets in Company; and (iii) failing to disclose material information regarding the value of Company stock and the prudence of investing Plan assets in Company. *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 907 (S.D. Tex. 2004). These fiduciary breaches were directed to the Plan as a whole, not specific class members or even a subset of class members. ERISA's remedial provisions, including restoration of the Plan's losses, are by definition plan-wide remedies. *Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474, 479 (S.D. Ga. 1991) (noting that "[t]he right to recovery, after all, belongs to the plan"). *See also Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa 2001) (granting certification of (b)(2) class in ERISA breach of fiduciary duty case); *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338

F.3d 755, 764 (7th Cir. 2003) (approving class certification under Rule 23(b)(2) in ERISA breach of fiduciary duty case).

Here, the proposed class easily satisfies all the requirement of Rules 23(a), (b)(1) and (b)(2). Plaintiff respectfully asks the Court to grant final class certification pursuant to Fed. R. Civ. P. 23(e) in conjunction with final approval of the Settlement.

### E. The Notice Is Adequate

In a traditional 23(b)(3) class, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). For Rule 23(b)(1)-(2) classes, however, the standard is somewhat different. The notice need only be "appropriate." Fed. R. Civ. P. 23(c)(2)(A). A notice which reaches "a significant number of class members" will often suffice, as will "informal methods." Fed. R. Civ. P. 23(c)(2)(A), advisory committee note (2003 Amendments).

As to content, in a non-opt out class, as is the case here, the notice must state: "the nature of the action"; "the definition of the class certified"; "the class claims, issues, or defenses"; "that a class member may enter an appearance through counsel if the member so desires"; and "the binding effect of a class judgment on class members under Rule 23(c)(3) [*i.e.*, in non-opt out classes]." Fed. R. Civ. P. 23(c)(2)(A).

Finally, quite aside from the requirements of Rule 23, due process requires that notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Notice should also provide a "very general description of the proposed settlement." *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (citation omitted). All of these requirements are easily met here.

The content of the Notice has already been approved by the Court, and the Notice was not sent to the Class until the Court approved it. There is no issue with respect to the content of

the Notice; it is as clear as such documents can be. As to the form of the Notice, notwithstanding the relaxed standard for notice under Rule 23(c)(2)(A), we have given direct mail notice to the approximately 5,400 Class members. *See* Declaration of Maria Bjazevich. We have also published notice on the websites of Co-Lead Counsel, and published the Summary Notice in the form approved by the Court in the National Edition of the Wall Street Journal. *See* Affidavit of publishing from Denver M. Prince, Wall Street Journal Advertising Clerk (attesting to timely service of Class notice by mail and by publication); Declaration of Lynn Lincoln Sarko on Behalf of Keller Rohrback L.L.P. in Support of Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Sarko Fee Declaration") ¶¶ 23-27 (attesting to compliance with the Court's November 1, 2004 Order re: notice to the Class). We have given not merely "appropriate notice," but the "best notice practicable."

### F. The Settlement is "Fair, Reasonable, and Adequate."

The court has wide discretion in approving the settlement. *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978). The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also, Cotton*, 559 F.2d at 1330.

Moreover, compromises of disputed claims are favored by the courts. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Consequently, settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (*quoting Pearson v. Ecological Science Corp.*, 522 F.2d 171, 176 (5th Cir. 1975); *D. H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir.), *cert. denied*, 404 U.S. 851 (1971); *Fla. Trailer & Equip. v. Deal*, 284 F.2d 567 (5th Cir. 1960)).

The standard for reviewing a proposed settlement of a class action, as repeatedly enunciated by the Fifth Circuit, is whether the proposed settlement is "fair, adequate and

reasonable" and has been entered into without collusion between the parties. *Cotton*, 559 F.2d at 1330; *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981); *Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984) (per curiam). In applying this standard, the Court must determine whether, in light of the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation." *Fla. Trailer & Equip. Co.*, 284 F.2d at 571.

When examined under these applicable criteria, this Settlement is an excellent result for the Class. Particularly where, as here, experienced counsel have negotiated a settlement at arm's-length with the help of an experienced mediator, a strong initial presumption is created that the compromise is fair and reasonable. *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982). The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, at 175 (5th Cir. 1983). Thus, if experienced counsel determine that a settlement is in the class' best interests, "the attorney's views must be accorded great weight." *Pettway*, 576 F.2d at 1216.

Furthermore, the Fifth Circuit has set forth six factors to analyze in determining whether a settlement should be given final approval, the evaluation of which demonstrate that the Settlement should be approved:

(1) The assurance that there is no fraud or collusion behind the settlement;

(2) The complexity, expense and likely duration of the litigation;

(3) The stage of the proceedings and the amount of discovery completed;

(4) The probability of plaintiff's success on the merits;

(5) The range of possible recovery; and

(6) The opinions of class counsel, class representatives and absent class members.

*Reed*, 703 F.2d at 172; *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 789 (5th Cir. 1986).

Factors one (1) through five (5) were addressed at length in the Plaintiff's Preliminary Approval Motion. Plaintiff incorporates that briefing by reference, and accordingly will not repeat a lengthy analysis of those factors here. With respect to factor (1), concerning the absence of collusion, Plaintiff notes the filing of the November 30, 2004 Declaration of Finis E. Cowan, Jr., who attests, as mediator, to the lack of collusion in these settlement negotiations. Plaintiff likewise incorporates by reference her Memorandum in Support of Class Counsel's Joint Petition for an Award of Attorneys' Fees, Reimbursement of Expenses, and an Incentive Award to the Named Plaintiff, the Sarko Fee Declaration, and the Machiz Fee Declaration, all filed November 24, 2004, which contain further information on the settlement achieved here.

With respect to factor six (6), Plaintiff previously addressed the opinions of class counsel and the class representative. The opinion of absent class members could not be addressed until after notice, which has now been accomplished. Plaintiff therefore addresses this sixth and final factor now.

Out of the 5,400 mailed Notices, publication on the Co-Lead Counsel's websites, and publication in the National Edition of the Wall Street Journal, we have thus far received only one objection of sorts – a communication from Mr. John Clark. In this correspondence, which he failed to file with the Court, Mr. Clark expresses regret that the Settlement fails to remedy a dispute that is wholly unrelated to this litigation. A copy of Mr. Clark's communication is submitted as Exhibit E to the Sarko Final Approval Declaration.[6]

Specifically, Mr. Clark is frustrated that the Settlement does not compensate him for what he perceives to be losses from the mandatory sale of Dynegy stock when Dynegy sold several of its Texas plants, including the one that employed Mr. Clark, in December 1999. Sarko Final Approval Declaration ¶ 14 and Exhibit E. According to documents provided by Mr. Clark, employees were given the option of going to work for the acquiring company, which agreed to

---

[6] In compliance with General Order No. 2004-11 (S.D. Tex.), Plaintiff has redacted Mr. Clark's birth date of birth and address. His social security number was previously redacted. Plaintiff will provide Mr. Clark's address or any other information upon any request by the Court.

17

accept into its 401(k) plan, via a "plan-to-plan transfer," these employees' accounts. Since the acquiring company could not offer Dynegy stock as an option in its 401(k) plan, accepting employment with the new company involved a forced sale of a participant's Dynegy stock. Accordingly, the Dynegy stock was cashed out on March 28, 2000 at the price of $57.00 per share. *Id.* at ¶ 15. Mr. Clark views this sale as premature, and believes he may have a claim that the "forced" sale of his Dynegy stock was a violation of law. At no time has a claim of this nature been encompassed in the operative Complaint in this litigation. *Id.* at ¶¶ 13, 16.

Moreover, the release given in the Settlement Agreement of claims that arise out of the facts or occurrences alleged in the Complaint, including the *acquisition and holding* of Dynegy stock, would not cover the claim described by Mr. Clark.[7] We have consulted with Defense counsel on this issue. Defendants concur that the claim identified by Mr. Clark is outside of the scope of the release provided for in the Settlement Agreement. Thus, whatever the merits of Mr. Clark's underlying claim, it is not one that could have been asserted by the Named Plaintiff, it was not part of this litigation, and is not released by the terms of the Settlement Agreement.

Ultimately, the fact that approximately 5,400 notices were mailed to class members, and not a single person has objected to the merits of the Settlement itself, is striking and strong evidence of the high value of the Settlement.

## CONCLUSION

For the reasons stated above, the Settlement represents an excellent recovery for the Class. Plaintiff, therefore, respectfully requests that the Court approve the Settlement and enter the [Proposed] Order and Final Judgment.

---

[7] Arguably, the applicable statute of limitations has run on any claim Mr. Clark may have had. Claims for breach of fiduciary duty run from three years of actual knowledge of the alleged breach. ERISA § 413; 29 U.S.C. § 1113

Dated: December 7, 2004

                                      Respectfully submitted,

                                      */s/ Robin L. Harrison*
                                      Robin L. Harrison
                                      State Bar No. 09120700
                                      So. District Texas Bar No. 4556
                                      Campbell, Harrison & Dagley, L.L.P.
                                      4000 Two Houston Center
                                      909 Fannin Street
                                      Houston, TX  77010
                                      Telephone:  (713) 752-2332
                                      Facsimile:  (713) 752-2330

                                      Attorney-in-Charge for Plaintiff

Justin Campbell, III
Campbell, Harrison & Dagley, L.L.P.
4000 Two Houston Center
909 Fannin Street
Houston, TX  77010
Telephone:  (713) 752-2332
Facsimile:  (713) 752-2330

Lynn L. Sarko
Gary Gotto
Elizabeth A. Leland
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone: (206) 623-1900 (Seattle)
Telephone: (602) 248-0088) (Phoenix)
Facsimile: (206) 623-3384 (Seattle)
Facsimile: (602) 248-2822 (Phoenix)

Marc I. Machiz
Marka Peterson
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
110 New York Ave NW
West Tower, Suite 500
Washington, D.C. 20005-3964
Telephone: (202) 408-3757
Facsimile: (202) 408-4699

Of Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I, hereby certify that on December 7, 2004, true and correct copies of the attached were served via U.S. Mail:

Paul J. Ondrasik
F. Michael Kail
Morgan D. Hodgson
STEPTOE & JOHNSON
1330 Connecticut Ave. N.W.
Washington D.C. 20036

Jacks C. Nickens
Nickens, Keeton, Lawless, Farrell & Flack, LLP
600 Travis Street, Suite 7500
Houston TX 77002

Michael W. Wilson
David Bissinger
Clements, O'Neill, Pierce, Wilson & Fulkerson, LLP
1000 Louisiana, Suite 1800
Houston TX 77002

                                                         Robin L. Harrison